UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-20975-CIV-HUCK / SIMONTON

**NIGHT BOX**
**FILED**

SEP 2 1 2006

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

vs.

JOHN P. UTSICK, ROBERT YEAGER,
DONNA YEAGER, WORLDWIDE
ENTERTAINMENT, INC., THE
ENTERTAINMENT GROUP FUND, INC.,
AMERICAN ENTERPRISES, INC. and
ENTERTAINMENT FUNDS, INC.,

      Defendants.

_____/

## RECEIVER'S SECOND OMNIBUS MOTION FOR AUTHORITY
## TO PAY FEES AND EXPENSES INCURRED BY PROFESSIONALS
## FOR THE PERIOD OF JUNE 1, 2006 – AUGUST 31, 2006

The Receiver, Michael I. Goldberg (the "Receiver"), by and through his attorneys, files

his second omnibus motion for authority to pay the fees and expenses incurred by his

professionals: Akerman Senterfitt; Kluger, Peretz, Kaplan, & Berlin PL; Russell L. Forkey, P.A.;

Pillsbury Winthrop Shaw Pittman LLP;[1] Hughes & Luce LLP; and Crisis Management Inc.

(collectively referred to as the "Professionals").

This motion is filed pursuant to the Order Appointing Receiver dated April 20, 2006, and

the authority specifically granted to the Receiver pursuant to ¶ 4 of the Order Appointing

Receiver.  An Appendix has been filed jointly with this motion, which includes the complete

---

[1] The Receiver seeks authority to pay Pillsbury Winthrop Shaw Pittman for the period commencing on April 26, 2006.

{FT339783;2}

1

time records of the Professionals sorted in chronological order and itemized to the tenth of an hour; the costs incurred by the Professionals; profiles of the Professionals who contributed a significant effort to the case;[2] and a summary of the Professionals' billing rates.

## I.    PROCEDURAL HISTORY

### A.    The Receiver's Appointment

On January 15, 2006, The Big Four-Oh, LLC, Summer 2003, LLC and EFI No. 32, LLC (the "Plaintiffs") filed their Verified Complaint for the Appointment of a Receiver and Related Relief against Worldwide Entertainment, Inc. ("Worldwide") and The Entertainment Group Fund, Inc. ("TEGFI"), in the United States District Court for the Southern District of Florida (the "Court"), seeking the appointment of a receiver over Worldwide and TEGFI and an accounting (the "Original Receivership").  The Plaintiffs claimed they were owed substantial monies by Worldwide and TEGFI.

Worldwide and TEGFI consented to the appointment of a receiver, and pursuant to this Court's Agreed Order Appointing Receiver entered on January 18, 2006, the Court appointed Michael I. Goldberg as Receiver over Worldwide and TEGFI with the power, duty and authority to administer and manage Worldwide and TEGFI's business affairs, funds and assets.  However, after further review of the activities of the parties and their affiliates, the Securities and Exchange Commission ("SEC") sought to expand the Original Receivership.  On April 18, 2006, the SEC filed a complaint in a new case against additional entities, including American Enterprises, Inc. ("AEI") and Entertainment Funds, Inc. ("EFI") (Worldwide, TEGFI, AEI and EFI are collectively referred to as the "Receivership Entities").  The SEC requested Michael Goldberg's appointment as receiver over all of the Receivership Entities.

---

[2] Profiles or resumes of attorneys and accountants who billed more than 10 hours of time.

{FT339783;2}

2

On April 20, 2006, the Court appointed Michael Goldberg as Receiver over the Receivership Entities. The Court further entered a Judgment of Permanent Injunction against each of the Receivership Entities and against their principals, John P. Utsick ("Utsick") and, Robert Yeager and Donna Yeager (jointly the "Yeagers"). Thereafter, on April 28, 2006, upon a Joint Stipulation of Dismissal, the Court entered an Order dismissing the Original Receivership.

### B.     The Receivership Entities' Background

Detailed background information of the Receivership Entities is more fully described in the Receiver's Initial Report filed on March 1, 2006, the Receiver's Second Report filed on July 19, 2006, and the First Omnibus Motion for Authority to Authority to Pay Fees and Expenses Incurred by Professionals filed on June 16, 2006, and approved by the Court on July 27, 2006.

## II.     THE EFFORTS OF THE PROFESSIONALS

Summaries of the efforts of the Professionals are provided below. Further details are included in their time records, located in the Appendix to this motion.

### A.     The Receiver and Akerman Senterfitt

The Receiver oversaw and familiarized himself with all aspects of the Receivership Entities and the efforts of his professionals. As the Receiver became more familiar with the scope of the Receivership Entities, he delved further into the operation and viability of their business ventures. The Receiver conferred with his attorneys and consultants to develop the "going forward" business activities of the Receivership Entities. The Receiver worked on the formation of "Fiestar" to replace Worldwide New England and designed a business plan to take Worldwide New England's successful rock festival and export it to other locations and, at the same time, build rock music circuits to feed the festivals' talent pipeline. The Receiver also focused on "Third Point", a smaller company which will focus almost exclusively on identifying

high quality/high profit margin live entertainment concepts, packaging them, and then selling those concepts/content to third parties.

In June 2006, the Receiver traveled to Europe to meet with affiliates of the Receivership Entities. During his visit to Germany, the Receiver visited the Wuhlheide Amphitheater and met with Wuhlheide's accountants to discuss Wuhlheide's operations. While in Berlin, the Receiver also met with representatives of LiveNation and SMG Entertainment, two major venue owners, to discuss their interest in purchasing the Wuhlheide. The Receiver also traveled to Amsterdam to meet with the representatives of Worldwide's Holland Ventures.

The Receiver traveled to London to meet with the producer of Sinatra, a show that depicts the life of Frank Sinatra through dance and videography and to discuss the status of Worldwide's investment in this project. The Receiver conferred with the producer to reach an acceptable resolution as to the extent of Worldwide's continued interest in Sinatra. While in London, the Receiver also met with various parties working on 3A, a London-based partnership which in 2003, received approximately $5 million from the Receivership Entities. The Receiver engaged in settlement negotiations with 3A representatives.

The Receiver continued to examine the viability of other projects. The Receiver explored the possibility of partnering the "Iron Chef" concept with third parties to produce the show. The Receiver worked on resolving the dispute with Robin Tate concerning the "Caveman Video" joint venture. The Receiver examined the status of Stone City Productions/Jack Utsick Presents, Inc. ("Stone City") and its various projects. The Receiver engaged in numerous conferences regarding the status of "Pledge This", a movie featuring Paris Hilton. The Receiver and his counsel continued to investigate the Receivership Entities' ownership in Omega Records. For

each of the projects, the Receiver focused on determining how best to maximize the assets for the benefit of the creditors and/or investors.

The Receiver conferred with counsel and monitored that status of litigation against Worldwide Australia LLC and Worldwide New Zealand, LLC. The Receiver conferred with his counsel and oversaw settlement with Joe Zada ("Zada") and Zada Enterprises LLC ("Zada Enterprises") (jointly referred to as the "Zada Parties") over $1.5 million that Worldwide had previously advanced to Zada. In consideration for said funds Zada Enterprises executed two separate promissory notes in favor of Worldwide, in the principal amounts of $1 million and $500,000. The Receiver consensually negotiated a settlement with the Zada Parties, whereby the Zada Parties agreed to pay the full $1.5 million obligation owed under both promissory notes and all accrued, unpaid interest.

The Receiver analyzed the corporate structure and viability the EP-3 Project, an oil drilling venture in Louisiana in which Yeager, or entities owned or controlled by Yeager, held a significant investment. At the time the Receiver was appointed, Yeager was about to enter into a joint venture agreement with a Texas corporation known as Browning Oil Co. ("Browning") to drill the EP-3 Project. The Receiver also learned that in furtherance of the EP-3 Project, Yeager caused the sum $1,097,774.14 to be transferred to an individual named Robert Verret to be held until LA-3 (controlled by Yeager) executed the agreement with Browning and drilling was to commence. The Receiver took steps to retrieve and safeguard the funds, made demand for the return of the funds and ultimately was successful in having all of the funds returned to the Receiver's control without having to expend significant funds on litigation.

The Receiver focused on the status of pension and Individual Retirement Account ("IRA") funds that investors sought to invest into the Receivership Entities. The Receiver

analyzed the Motion for Interpleader (the "Interpleader") filed by 1st Source Bank ("1st Source"), based on its concern of being subject to competing claims to such funds by account holders, the Internal Revenue Service and the Receiver. The Receiver consulted with counsel for 1st Source and attended the Interpleader hearing.

The Receiver continued to investigate the theft of investor funds by Sheri DiSalvo ("DiSalvo"), who managed investor pension and IRA funds through her company American National Pension Services ("ANPS") prior to her death in August 2005. With the assistance of his forensic accountant, the Receiver identified $4 million in funds that DiSalvo transferred from ANPS accounts to her personal accounts or directly to third parties for her personal benefit and for the benefit of her family members and friends. After confirming DiSalvo's theft of millions of dollars of investor funds, the Receiver researched and prepared a motion to expand the receivership to include ANPS.

The Receiver worked with his probate attorneys to file claims in DiSalvo's probate estates, located in Florida and California. When the Florida probate estate objected to the Receiver's claim, the Receiver's counsel filed a lawsuit to defend the claim. The Receiver also focused on preserving property which DiSalvo purchased with investor funds.

The Receiver concentrated on developing a claims process for the analysis of claims and ultimately the return of funds to the investors. The Receiver worked with his counsel to prepare and extensive motion setting forth the various methods to calculate allowed claims. With the assistance of Akerman Senterfitt ("Akerman") attorneys, paralegals, and law clerks, the Receiver continued to respond to hundreds of investor telephone calls, e-mail messages and letters. The Receiver has set up an investor database and continues to update the database on a daily basis as

new investor contact information is received. The Receiver also continued to hold conferences with his investor advisory board.

The Receiver continued to inform interested parties of the status of the Receivership. The Receiver updated the information provided in the web page. The Receiver conferred with counsel for the SEC, advised the SEC on his findings, the continuing business enterprises and the recovery of assets. Based upon the Receiver's analysis of the projects, joint ventures and properties, the Receiver prepared filed and distributed his Second Report on July 19, 2006.

Additionally, the Receiver continued to liquidate assets and recover funds for the benefit of the investors. The Receiver reviewed contracts and commitments and oversaw the continued obligations of the Receivership Entities and their affiliates. The Receiver researched, prepared and filed motions with the Court, seeking authority from the Court to sell Utsick's life insurance policies and to sell the Yeagers' automobiles and motorcycles. The Receiver's attorneys researched and prepared a due diligence report for the sale of the Jacksonville property.

The Receiver seeks payment of $300,226.50 in fees and $19,957.89 in expenses for a total of $320,184.39. Copies of Akerman's billing records are attached hereto as Exhibit A-4.

**B.      Russell L. Forkey, P.A.**

Prior to the appointment of the Receiver, Russell L. Forkey ("Forkey") served as counsel to Utsick and his corporate entities. Forkey's knowledge of the Receivership Entities and their affiliates has continued to be a valuable asset to the Receiver and essential in assisting the Receiver in the transition in operating the Receivership Entities. Forkey responded to the Receiver's request for information for projects including Sinatra, 3A, Dirty Dancing, Brittney Speaks, MotoRock, Stone City Productions and Keswick. Forkey and his staff conferred with Utsick, and identified, gathered and organized documents for the Receiver.

Forkey seeks payment of $11,220.00 in fees and $1,817.30 in expenses for a total of $13,037.30. Copies of Forkey's billing records are attached hereto as Exhibit B-3.

### C.   Kluger, Peretz, Kaplan, & Berlin PL

With the assistance of attorneys working with him at Kluger, Peretz, Kaplan, & Berlin PL ("KPKB"), Howard Berlin ("Berlin") concentrated on the viability of the business enterprises of the Receivership Entities and their affiliates. Berlin continued to focus on the national and international businesses operated by the Receivership Entities and their affiliates. Berlin worked on the "going forward" business activities of the Receivership Entities through the formation of Fiestar and Third Point. Berlin joined the Receiver in his travels to Germany and met Wuhlheide's accountants to discuss Wuhlheide's operations. Berlin also traveled with the Receiver to London to meet with Sinatra's producer regarding Worldwide's investment in Wuhlheide. While in London, Berlin meet with various parties and learned about the status of Worldwide's investment in 3A.

Berlin examined, reviewed and negotiated projects, including the Iron Chef, Sinatra, the Robin Tate dispute and Stone City. Berlin continued to investigate the receivership's ownership in Omega Records and sought additional records and information from third parties. Berlin monitored and participated in the litigation taking place in Australia and New Zealand. Berlin negotiated the settlement with Zada, prepared a motion to approve the settlement agreement, and attended the District Court hearing on the approval of the settlement. Berlin analyzed the oil drilling venture in Louisiana known as the "EP-3 Project" and assisted the Receiver in retrieving and safeguarding the $1 million that Yeager invested in this project. Berlin negotiated with counsel for 1st Source regarding its Motion for Interpleader, attended the court hearing on the motion and assisted 1st Source in gathering and analyzing claims.

{FT339783;2}

8

Berlin conducted extensive research into the claims process in federal receivership cases, and prepared a detailed motion and memorandum of law setting forth various methods pursuant to which the Receiver can calculate allowed claims so that the Receivership Court may determine the appropriate method to be used under the circumstances.

KPKB seeks payment of $227,887.80 in fees and $25,696.78 in expenses for a total of $253,584.58. Copies of KPKB's billing records[3] are attached hereto as Exhibit C-4.

### D.    Crisis Management Inc.

Alan Goldberg ("A. Goldberg"), the principal of Crisis Management Inc., continued to assist the Receiver in the analysis of the gas and oil leases and their potential value. Goldberg traveled to Dallas, Texas to gather information, met with the Receiver and advised him on the gas and oil leases.

Goldberg also continued to assist the Receiver in examining ANPS records. Goldberg restored and printed the contents of the ANPS hard drive. Goldberg interviewed parties with knowledge of DiSalvo's business practices and prepared a report for the Receiver. Goldberg analyzed the documents retrieved from the hard drive, reviewed ANPS bank records and prepared a report to the Receiver identifying potential fraudulent transfers made by DiSalvo.

A. Goldberg seeks payment of $33,330.00 in fees and $24.50 in expenses for a total of $33,354.50. Copies of A. Goldberg's billing records are attached hereto as Exhibit D-4.

### E.    Pillsbury Winthrop Shaw Pittman

The Receiver engaged Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") to assist him with filing and defending the claims to millions of dollars in DiSalvo's California probate estate. Since the Receiver learned about DiSalvo's theft of assets of the Receivership Entities after the

---

[3] KPKB billing records indicate a balance of $236,567.80 in fees, however KPKB has taken a voluntary reduction of $8,680.00 in its fees.

{FT339783;2}

9

expiration of the deadline to file a claim in her California probate estate, the Pillsbury attorneys researched the proper procedure for filing a creditor's claim after the passage of the claims deadline. Pillsbury conferred with the Receiver and analyzed strategies to preserve the Receiver's claim. Pillsbury reviewed the Receiver's Initial Report and forensic filings for relevant information to include in the petition for allowance of the Receiver's claim as a timely filed claim. Pillsbury prepared the creditor's claim, petition and declarations of the Receiver and his forensic accountant in support of the petition. Pillsbury attended the probate court hearing on allowance of the Receiver's claim as a timely filed claim. The Court granted the petition, however the representatives of DiSalvo's estate subsequently filed an objection to the Receiver's claim. Pillsbury has begun analyzing the strategy to defend the Receiver's claim on its merits.

Pillsbury seeks payment of $52,161.00 in fees and $1,312.37 in expenses for a total of $53,473.37. Copies of Pillsbury's billing records are attached hereto as Exhibit E-4.

**F.      Hughes & Luce LLP**

In February 27, 2006, roughly one month after the filing of the Initial Receivership, twenty (20) out of the more than 3,300 investors filed a lawsuit in the United States District Court for the Eastern District of Texas, *Smith, et al. v. Utsick, et al.*, Civil Action No.: 2:06cv74 against Utsick, Yeager, AEI and The Big Four-Oh, LLC, seeking damages under state common law and federal law (the Texas Action"). Immediately after the Receiver's April 20, 2006 appointment, the Receiver filed a Notice of Pendency of Receivership in the Texas Action. When the Receiver learned that the Texas Action was not stayed, the Receiver engaged Hughes & Luce LLP ("Hughes") to intervene on behalf of the Receiver.

In a time span of less than two weeks, Hughes attorneys researched, prepared and filed a Motion to Intervene and a Motion to Stay on behalf of the Receiver. Both motions included a

{FT339783;2}

detailed factual history and a comprehensive memorandum of law.  After negotiations with the plaintiffs, all parties agreed to allow the Receiver to intervene and to a stay of the proceeding. The Order granting the stay was entered on June 28, 2006.  Except for an occasional status report, Hughes' representation of the Receiver had been concluded.

Hughes seeks payment of $22,964.50 in fees and $1,632.77 in expenses for a total of $24,597.27.  Copies of Hughes' billing records are attached hereto as Exhibit F-4.

### G.     Additional Costs – Legal fees of Klein & Sallah, LLC

On January 2006, while gathering information about Utsick's business activities, the SEC sought to depose Letizia Hernandez, who was a Worldwide employee.  Ms. Hernandez sought the assistance of legal counsel, James D. Sallah, of Klein & Sallah, LLC ("Sallah").  Sallah conferred with the SEC on behalf of Ms. Hernandez.  The parties reached an agreement whereby Sallah's fees would be paid by the Receivership.  Accordingly, the Receiver seeks authority to pay $676.00 to Sallah for his fees.   A copy of Sallah's invoice is attached hereto as Exhibit G-1.

## III.    RECEIVER'S PLANNED COURSE OF ACTION

The Receiver's essential duty is to safeguard the Receivership Entities' assets by taking whatever actions are necessary for the protection of the Receivership Entities' creditors.  The Receiver will continue to: *i)* identify, locate and secure the assets of the Receivership Entities and their affiliates; *ii)* examine the Receivership Entities' and their affiliates' business operations to discern the Receivership Entities' potential for reorganization; *iii)* continue the Receivership Entities' business operations to preserve and maximize their value for creditors; *iv)* identify and communicate with investors who provided funds directly or indirectly to the Receivership Entities; *v)* meet with the Receivership Entities' affiliates and business partners of the Receivership Entities' in an ongoing effort to educate himself concerning their numerous

worldwide operations and investments; and *vi)* identify claims and develop legal theories of recovery against parties whose actions may have harmed the Receivership Entities, their affiliates and the creditors.

## IV.    FACTORS SUPPORTING FEE APPLICATION

Although this case is a federal court equity receivership and not a bankruptcy proceeding, the Receiver believes there are many similarities between the two and that the Court may wish to evaluate the Professionals' applications in light of the factors set forth in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977). For the Court's convenience, these factors are discussed below.

### A.    The Novelty and Difficulty of the Services Rendered.

Due to the size and scope of the Receivership, the Receiver and KPKB continued to devote significant resources to the transition of the operations of the Receivership Entities and their affiliates. The Receiver's efforts have also been complicated by the fact that assets and related entities are located in major metropolitan areas throughout the world.

### B.    The Skill Requisite to Perform the Services Properly.

The Receiver has gathered prominent, well regarded practitioners to assist him with business analysis, litigation and forensic accounting. The Receiver has also tapped into the skills of attorneys for corporate, real estate and probate matters. Profiles of the attorneys and accountants are included in the Appendix in Exhibits A-2, C-2, D-2, E-2 and F-2.

### C.    The Preclusion of Other Employment by the Professional Due to the Acceptance of the Case.

The Professionals have not been precluded from accepting other employment by virtue of their representing the Receiver in this case.

D.     **The Customary Fee.**

The Receiver and Berlin have voluntarily reduced their billing rates from more than $450.00 per hour to $360.00 per hour, and have further lowered the rates of Akerman and KPKB attorneys and paraprofessionals an average of $20.00 to $50.00 per hour.   Compared to Akerman's standard rates, these reductions have lowered Akerman's bill by $66,000.00. Accordingly, the hourly rates sought by Akerman and KPKB professionals in connection with this case are well below the rate they charge other clients and are lower than the customary hourly rates charged by other experienced professionals and litigators in the Southern District of Florida.

The rates charged by Hughes are commensurate with the customary rates for litigation taking place in U.S. district courts in Texas.   The rates charged by Pillsbury are comparable to the customary rates charged by national firms working on litigation in California.   Moreover, the skills and reputations of the professionals at Hughes and Pillsbury support their rates.   Profiles of the Hughes and Pillsbury professionals are included in the Appendix in Exhibits E-2 and F-2.

E.     **Whether the Fee is Fixed or Contingent.**

The Professionals' fees are not fixed or contingent.   However, the Receiver did not provide a retainer to any of the Professionals and thus their chances of receiving payment were not guaranteed.   Therefore, in a sense, the Professionals are employed on a contingency basis.

F.     **Time Limitations Imposed by the Client or Other Circumstances.**

Due to the scope of the business of the Receivership Entities, the Receiver and KPKB continue to devote significant time to the Receivership.   Akerman's paraprofessionals continue to respond to hundreds of calls and letters from investors.   Hughes was temporarily required to devote significant resources to filing the interpleader and stay motions in the Texas Action.

{FT339783;2}

13

However, as a result of the motions, the Texas Action was quickly resolved and concluded. Pillsbury was also initially under a time constraint, as it had a small window of time under California probate law to prepare and file the Receiver's request for his claim in DiSalvo's California probate estate to be deemed a timely filed claim.

### G.   The Experience, Reputation, and Ability of the Professional, The Undesirability of the Case.

#### 1.   Akerman Senterfitt

Akerman is one of the largest law firms in the State of Florida, with more than 425 attorneys located in seven offices throughout the State of Florida.  In the past year, Akerman added more than 50 additional attorneys and consultants, when it expanded to Washington, D.C., New York City and integrated Wickwire Gavin, a nationally recognized construction law and government contracts boutique with offices in Northern Virginia, Los Angeles and Wisconsin.

As a large law firm, Akerman is one of the few law firms in South Florida that would be able to devote the attorney time and resources needed for this case.  Akerman has been able to utilize its resources of real estate, corporate and specialized litigation attorneys to work on various matters with have arisen in the receivership.  Akerman's attorneys are well known throughout the courts of the State of Florida and the United States.  Akerman has a good reputation in the legal profession in the Southern District of Florida in general and in receivership and securities matters in particular.  The experience, reputation and Akerman's ability are appropriate matters for consideration in determining the fee to be awarded.

Finally, although representing the Receiver in this case could hardly be characterized as "undesirable", Akerman has billed its time at rates significantly less than it bills other clients and the payment of fees was contingent based on the fact that Akerman was not guaranteed payment.

### 2.    Russell L. Forkey, P.A.

Prior to the appointment of the Receiver, Forkey served as counsel to Utsick and his corporate entities.   Forkey's knowledge of the Receivership Entities and Affiliates has been extremely valuable to the Receiver and essential in assisting the Receiver in the transition from Utsick to the Receiver operating the Receivership Entities and Affiliates.

### 3.    Kluger, Peretz, Kaplan, & Berlin LP

Located in Miami, and recently expanded to Boca Raton, Florida, KPKB is a fifty lawyer firm focused on providing businesses and individuals with cost effective, quality counsel on their most important matters. Recognized as one of the top law firms in South Florida, KPKB was selected, in 2003, as the inaugural recipient of the Florida Business Journal's Best Firm of the Year award.  Striving for excellence rather than breadth, KPKB purposely focuses its practice in four select areas: Litigation & Dispute Resolution, Bankruptcy & Creditors' Rights, Business & Real Estate Transactions, and Intellectual Property and Commercialization.

Berlin is the lead attorney advising the Receiver.  He brings more than 25 years of experience representing corporate debtors, secured lenders, creditors' committees, and individual creditors in federal, bankruptcy, and state court insolvency proceedings.  He has helped his clients successfully structure workouts, debt restructurings, and business reorganizations.  Berlin has a good reputation in the legal profession in the Southern District of Florida in general and in receivership and securities matters in particular.  Berlin has been named a member of the "Legal Elite" by Florida Trends magazine; "Best of the Bar" by the South Florida Business Law Journal; "Top Lawyer" by the South Florida Legal Guide, and listed in the Best Lawyers in America for over 10 consecutive years, including 2006.

### 4.   Crisis Management Inc.

A. Goldberg currently serves as a panel trustee for Chapter 7 cases in the United States Bankruptcy Court for the Southern District of Florida and has been appointed a Chapter 7 and Chapter 11 Trustee in over 1,000 individual and corporate cases.  He has experience investigating and analyzing intricate financial matters relating to civil, criminal, and commercial litigation, conducting complex financial analyses, providing expert witness testimony and has receiver certification as a Certified Forensic Examiner, Certified Turnaround Professional, and a Certified Fraud Examiner.

### 5.   Pillsbury Winthrop Shaw Pittman LLP

The firm dates back to 1868 with the establishment of the predecessor to Winthrop, Stimson, Putnam & Roberts in New York City.  Pillsbury, Madison & Sutro emerged in San Francisco from the bustling aftermath of the California Gold Rush, later serving as the law firm that helped to create Standard Oil Company of California (now Chevron) and Pacific Bell (now AT&T).  The 1990 merger with the Los Angeles-based firm of Lillick & McHose added an extensive Pacific Rim practice to the firm, and the 1996 merger with Cushman Darby & Cushman in Washington, DC, helped Pillsbury become one of the nation's leading intellectual property firms.  Pillsbury and Winthrop merged in 2001, creating a bicoastal law firm focused on capital markets, finance, energy, litigation, real estate and technology.  Through a 2005 merger with Washington, DC-based Shaw Pittman, a 300-lawyer firm founded in 1954, the firm gained pioneering practices in global sourcing, energy, real estate, technology and communications.  Today, Pillsbury consists of more than 800 lawyers practicing in 15 international offices.

The firms that combined to create today's Pillsbury have produced many leaders in law, jurisprudence and public service.  Albert Boro, Jr., one of the lawyers leading the Receiver's

California efforts, was a law clerk to Supreme Court Justice Byron R. White from 1987 to 1988, and prior to that for Judge Walter J. Cummings of the Seventh Circuit U.S. Court of Appeals.

### 6. Hughes & Luce LLP

Hughes traces its roots to the decision by four young lawyers to break away from their established Dallas law firm in 1973. The move was a bold response to their perception that existing Dallas firms were not providing the Texas business community with the quality and responsiveness of legal services its rapid growth was demanding. Hughes is presently a Texas-based law firm, with offices in Austin, Dallas and Fort Worth. However, their clients are national and international, with business interests throughout the world.

Hughes encourages its attorneys to participate actively in the profession, the bar and the community. Over the years, their attorneys have taken the lead in various legal and community organizations, including the American Bar Association, the State Bar of Texas, Dallas Hispanic Bar Association, and the Texas Women Lawyers. They have served as presidents and board members, driving policy and programs to develop more diverse involvement in these groups.

### H. The Nature and Length of the Professional Relationship With the Client.

The Receiver is a shareholder of Akerman Senterfitt.

### I. Awards in Similar Cases.

The awards sought by Akerman and KPKB in connection with this case are consistent with the fees sought and awarded in similar receivership cases. The awards sought by Hughes and Pillsbury are comparable to fees sought and awarded in district court litigation in their respective jurisdictions.

**J.**     **Benefit to the Estate.**

As is more fully detailed through this motion, the Receiver and his Professionals have conferred a substantial benefit on this estate. In summary, the Receiver has managed a smooth transition of the operation of the Receivership Entities. Akerman is timely responding to hundreds of investor inquiries. KPKB has negotiated multi-million dollar settlements on behalf of the Receiver and has developed a business plan for the future operations of the Receivership Entities. To date, A. Goldberg has analyzed and uncovered $4 million in potential fraudulent transfers made by DiSalvo. Hughes has stayed the Texas Action. Pillsbury has secured the Receiver's $10 million claim against DiSalvo's California probate estate as a timely-filed claim.

**K.**     **Sharing of Compensation.**

There is no agreement among the Professionals or between the Professionals or any other person for the sharing of any compensation which may be awarded in connection with this case.

**WHEREFORE**, the Receiver seeks entry of a Order granting this omnibus motion and authorizing the Receiver to pay the second interim award of fees and costs to the Professionals in the amounts set forth herein.

<div style="margin-left: 40%;">

Respectfully submitted,

**AKERMAN SENTERFITT**
Attorneys for Michael I. Goldberg, Receiver
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
Email: joan.levit@akerman.com

By: _____
      Joan M. Levit, Esq.
      Florida Bar No. 987530

</div>

## CERTIFICATION

Pursuant to Local Rule 7.3[4/], undersigned counsel hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission, who has no objection to the motion, but reserves the right to make further comments on the billing statements, and with counsel for the Utsick and the Yeagers, both of which have taken no position on the motion. A hearing is requested only in the event that someone files an objection thereto.

Joan M. Levit, Esq.

## VERIFICATION

Michael Goldberg's Verification is contained in Exhibit A-3 to the Appendix to this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail on this _21_ day of _September_ 2006, to all counsel on the Attached Service List.

Respectfully submitted,

**AKERMAN SENTERFITT**
Attorneys for Michael I. Goldberg, Receiver
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Phone: (954) 463-2700
Fax: (954) 463-2224
Email: joan.levit@akerman.com

By: _____
Joan M. Levit, Esquire

---

[4/]    The certification regarding review of time records required by Local Rule 7.3 is contained within the attached Verification.

{FT339783;2}

Florida Bar No. 987530

## SERVICE LIST

Alise M. Johnson
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6322 (Direct Dial)
(305) 982-6300 (Telephone)
(305) 536-4154 (Facsimile)
E-Mail: johnsona@sec.gov
*Counsel for Plaintiff*

Richard Kraut, Esq.
Dilworth Paxson LLP
1133 Connecticut Ave, N.W., Suite 620
Washington, DC 20036
(202) 452-0900 (Telephone)
(202) 452-0930 (Facsimile)
*Counsel for Jack P. Utsick*

David R. Chase, Esq.
David R. Chase, P.A.
Wachovia Center – Penthouse
1909 Tyler Street
Hollywood, Florida  33020
(954) 920-7779 (Telephone)
(954) 923-5622 (Facsimile)
E-Mail: david@davidchaselaw.com
*Counsel for Jack P. Utsick*

Richard A. Serafini, Esq.
Greenberg Traurig, P.A.
401 East Las Olas Blvd., Suite 2000
Ft. Lauderdale, Florida 33301
(954) 768-8256 (Direct)
(954) 765-0500 (Telephone)
(954) 765-1477 (Facsimile)
*Counsel for Robert Yeager, Donna Yeager*
*American Enterprises, Inc. and Entertainment Funds, Inc.*

{FT339783;2}

Howard J.Berlin, Esq.
Kluger Peretz, Kaplan, et al.
201 South Biscayne Blvd. - 17th Floor
Miami, Florida 33131
(305) 379-9000 (Telephone)
(305) 379-3428 (Facsimile)
email: hberlin@kpkb.com
***Counsel for Receiver***

David M. Levine, Esq.
Tew Cardenas LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
(305) 536-1112 (Telephone)
(305) 536-1116 (Facsimile)
dml@tewlaw.com
***Counsel for First Source Bank***