UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 06-20975-CIV-HUCK/O'SULLIVAN

SECURITIES AND EXCHANGE
COMMISSION,
                              Plaintiff,

v.

JOHN P. UTSICK, ROBERT YEAGER,
DONNA YEAGER, WORLDWIDE
ENTERTAINMENT, INC., THE
ENTERTAINMENT GROUP FUND, INC.,
AMERICAN ENTERPRISES, INC. and
ENTERTAINMENT FUNDS, INC.,
                              Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER was referred to United States Magistrate Judge John J.

O'Sullivan by the Honorable Paul C. Huck, United States District Court Judge for the

Southern District of Florida pursuant to 28 U.S.C. § 636 (b) for a report and

recommendation concerning the amount of fees to be awarded to certain attorneys and

other professionals pursuant to the Settlement Agreement between the Receiver and

the DiSalvo Defendants. See Order of Reference to Magistrate Judge (DE# 407,

1/22/09). Having reviewed the applicable filings and the law and having held a hearing

on March 3, 2009, the undersigned respectfully recommends that the Court approve

$700,000 in attorneys' fees and costs to the DiSalvo Professionals and that the DiSalvo

Professionals be permitted to allocate these funds among the various professionals.[1]

The undersigned has carefully reviewed the billing documentation submitted by the

_____

[1] In the alternative, the Court may allocate the fees in proportion to the amount of
fees the undersigned has found is reasonable for each of the DiSalvo Professionals.
See Chart on p. 60-61, infra.

DiSalvo Professionals and finds that reasonable fees and costs total **$775,186.08**. It is further recommended that the Amended Motion for Release and Payment of 50% of Professional Fees and Costs (DE# 357, 12/12/08) be **DENIED as moot.**

## BACKGROUND

**1.      Instant Action**

The instant case is a receivership action commenced on April 17, 2006 by the Securities and Exchange Commission (hereinafter "SEC") against John P. Utsick, Robert Yeager, Donna Yeager, Worldwide Entertainment, Inc., the Entertainment Group Fund, Inc., American Enterprises, Inc. and Entertainment Funds, Inc. See Complaint for Injunctive and Other Relief  (DE# 1, 4/17/06). The complaint alleged that the defendants "raised more than $300 million from at least 3,300 investors nationwide through the sale of securities in the form of loan agreements and units in special-purpose limited liability companies." Id. at 1. According to the complaint, the defendants made various material misrepresentations and omissions to potential and actual investors. Id. at 2.

The complaint sought the following relief: (1) a declaration that the defendants committed the alleged securities laws violations; (2) the issuance of a permanent injunction restraining and enjoining the defendants and others from violating securities laws; (3) an order freezing the defendants' assets and requiring the defendants to file with the Court sworn written accountings; (4) the appointment of a receiver over the assets of the corporate defendants; (5) the preservation of records; (6) the disgorgement of any profits or proceeds received by the defendants as a result of the

alleged wrongful conduct; (7) various civil penalties and (8) the repatriation of investor proceeds.

On April 20, 2006, the Court appointed the Receiver. See Order Appointing Receiver (DE# 12, 4/24/06). The Court's Order (DE# 12) authorized the Receiver to "[t]ake immediate possession of all the Defendants' property, assets and estates, and all other property of the Defendants of every kind whatsoever and wheresoever located belonging to or in the possession of the Defendants . . . ." Id. at 2. The Order further authorized the Receiver to:

> Investigate the manner in which the affairs of the Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and their investors and other creditors, as the Receiver deems necessary . . . which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in the Defendants . . . .

Id. at 2-3.

## 2. The DiSalvos

After reviewing bank records, the Receiver learned that Sheri DiSalvo[2] transferred more than $10.2 million of investor money for her personal use and benefit. Sheri DiSalvo passed away in August 2005. In October 2005, Sheri DiSalvo's sons, Duane and Wayne DiSalvo, filed Letters of Administration and opened a probate estate

---

[2] Sheri DiSalvo, through her business American National Pension Services, served as pension administrator for investors who wanted to invest fund from their Individual Retirement Accounts with the Receivership Entities. See Receiver's Motion to Approve Settlement Agreement, Mutual Release and Covenant not to sue by and between the Receiver, Duane DiSalvo and Wayne DiSalvo, Individually and as Co-personal Representatives of the Estate of Sheri DiSalvo, Candy DiSalvo and Lisa DiSalvo a/k/a Lisa Dickey and Incorporated Memorandum of Law (DE# 313 at 2, 11/4/08).

in the Superior Court for Santa Clara County, California (hereinafter "California Probate Action"). In January 2006, the DiSalvo brothers filed a petition for ancillary administration in Miami-Dade County, Florida (hereinafter "Florida Probate Action"). The Receiver filed claims in both the California Probation Action and the Florida Probate Action. The Receiver also filed civil actions in Florida and California against Wayne DiSalvo, Duane DiSalvo, Wayne DiSalvo's spouse Lisa DiSalvo and Duane DiSalvo's former spouse Candy DiSalvo. The California civil action filed by the Receiver also included claims against American National Pension Services, Sheri DiSalvo's business.

**3.    The Settlement Agreement**

The Receiver, the DiSalvo brothers and the DiSalvo spouses ultimately reached a settlement (hereinafter "Settlement Agreement"). See Settlement Agreement Mutual Release and Covenant Not to Sue (DE# 313 at Exhibit 1, 11/4/08). Under the terms of the Settlement Agreement, the Receiver would obtain approximately $3.2 million in cash and title to seven pieces of unencumbered real property from the DiSalvos. The Receiver would authorize an amount not to exceed $700,000.00 to satisfy reasonable attorneys' fees and costs incurred on behalf of the DiSalvo brothers and the DiSalvo spouses, to the extent that the Court approved such payment.

On November 4, 2008, the Receiver filed a motion for court approval of the Settlement Agreement reached with non-parties Duane and Wayne DiSalvos, the Estate of Sheri DiSalvo and the DiSalvo spouses. See Receiver's Motion to Approve Settlement Agreement, Mutual Release and Covenant Not to Sue by and Between the

4

Receiver, Duane DiSalvo and Wayne DiSalvo, Individually and as Co-personal Representatives of the Estate of Sheri DiSalvo, Candy DiSalvo and Lisa DiSalvo a/k/a Lisa Dickey and Incorporated Memorandum of Law (DE# 313, 11/4/08). The Receiver filed declarations in support of the amount of fees and costs sought pursuant to the Settlement Agreement. See Notice of Filing Declaration (DE# 319, 11/7/08).

The Court held a hearing on the Receiver's motion on November 10, 2008. Defendant John Utsick opposed the Settlement Agreement. See Opposition of Defendant John P. (Jack) Utsick to Receiver's Motion to Approve Settlement Agreement, Mutual Release and Covenant Not to Sue by and Between the Receiver and the DiSalvo Parties (DE# 320, 11/10/08). The Court granted the motion to approve the Settlement Agreement. See Order Granting Receiver's Motion for Approval of Settlement Agreement, Mutual Release and Covenant Not to Sue by and Between the Receiver, Duane DiSalvo and Wayne DiSalvo, Individually and as Co-personal Representatives of the Estate of Sheri DiSalvo, Candy DiSalvo and Lisa DiSalvo a/k/a Lisa Dickey (DE# 322, 11/10/08).

Defendant Utsick subsequently moved for reconsideration of the order approving the Settlement Agreement. See Defendant John P. (Jack) Utsick's Motion for Reconsideration of the Court's Order on the Receiver's Motion to Approve Settlement Agreement, Mutual Release and Covenant Not to Sue by and Between the Receiver and the DiSalvo Parties (DE# 324, 11/12/08). The Court approved the Settlement Agreement in an Amended Order (DE# 381, 11/17/08) but left open the amount of attorneys' fees it would approve. The Court held a hearing on November 19, 2008. During the November 19, 2008 hearing, the Court considered the allocation of

5

attorneys' fees related to the Settlement Agreement. <u>See</u> Order (DE# 354, 12/11/08). The SEC agreed to review the DiSalvo Professionals' fee requests and provide the Court with a written report.  <u>Id.</u>

On December 12, 2008, the DiSalvo Professionals filed their Amended Motion for Release and Payment of 50% of Professional Fees and Costs (DE# 357, 12/12/08). On December 16, 2008, defendant Utsick filed his opposition to the amended motion for release of funds. <u>See</u> Opposition of Defendant John P. (Jack) Utsick to Motion of the DiSalvos for Release and Payment of 50% of Professional Fees and Costs (DE# 365, 12/16/08).

On January 5, 2009, the SEC filed Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381, 1/5/09). The DiSalvo Professionals submitted fees and costs totaling $795,166.44. The SEC's report recommended that the DiSalvo Professionals recover $378,821.94 in fees and costs. In addition to this amount, the SEC deferred making a recommendation on approximately $170,964.52 finding that some of the DiSalvo Professionals should be permitted to supplement their billing entries in order to determine whether such billing entries were reasonable. The SEC's report recommended reductions for various reasons including: excessive hourly rates, nondescript billing entries, insufficient detail, administrative work, work related to the recovery of fees and excessive number of attorneys working on the same task.

On January 20, 2009, certain DiSalvo Professionals filed objections to the SEC's report. <u>See</u> Notice of Filing Responses and Objections to Plaintiff's Report to Court on Attorneys' Fees (DE# 401, 1/20/09). Some of the DiSalvo Professionals objected to the

reduced hourly rates claiming that the hourly rates sought were reasonable. They objected to the SEC's reliance on the reduced rates charged by the professionals retained by the Receiver as a yardstick in determining  reasonable hourly rates for the DiSalvo Professionals. The DiSalvo Professionals also objected to the SEC's determination that the billing records of some of the DiSalvo Professionals should be denied without leave to supplement those records.

**5.      Proceedings Before the Undersigned**

On March 3, 2009, the undersigned held a hearing on the DiSalvo Professionals' objections to the SEC's recommended fees and costs. The undersigned permitted the DiSalvo's private investigator, Kevin Gors, to submit typed redacted billing records by March 10, 2009 and the DiSalvo Professionals to submit expert affidavits and to supplement their requested fees and costs by March 17, 2009. See Order (DE# 475, 3/3/09). On March 10, 2009, Mr. Gors filed his redacted billing records for the Court's consideration. See Notice of Filing Kevin Gors' Redacted Handwritten Notes (DE# 484, 3/10/09). On March 17, 2009, the DiSalvo Professionals filed their supplemental records. See Richman Greer, P.A.'s Notice of Filing Supplemental Detailed Time Entries Pursuant to Court Order Dated March 3, 2009 (DE# 495, 3/17/09), Notice of Filing Supplemental Response of Lovitt & Hannan, Inc. And Bartko, Zankel, Tarrant & Miller Pursuant to March 3, 2009 Order (DE# 496, 3/17/09), Notice of Filing Expert Affidavits Pursuant to Court Order Dated March 3, 2009 (DE# 497, 3/17/09), Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498, 3/17/09) and Richman Greer, P.A.'s Compliance with March 3, 2009 Order by United

States Magistrate Judge, John J. O'Sullivan (DE# 499, 3/17/09).

## ANALYSIS

The Court's Order (DE# 407) referring this matter to the undersigned requests that in reviewing the hourly rates sought by the DiSalvo Professionals, the undersigned "consider that the professionals retained by the Receiver in this case have been retained at a discounted hourly rate and that consideration should be included in any determination of reasonableness of professional fees with respect to the DiSalvo Professionals." See Order of Reference to Magistrate Judge (DE# 407 at 2, 1/22/09). Taking into account the Court's instructions, the undersigned will review the bills submitted by the DiSalvo Professionals.

**1.      Donna Blaustein, Esq.**

Attorney Donna Blaustein was counsel for Sheri DiSalvo's ancillary probate estate in Florida. Ms. Blaustein has been an attorney practicing in the area of probate law for more than 30 years. She initially requested fees in the amount of $14,100 and $360 in costs.[3] The SEC found that the billing records submitted by Ms. Blaustein were not sufficiently detailed and recommended that she be permitted to resubmit more detailed billing descriptions. The SEC further recommended that Ms. Blaustein recover full costs.

In her response to the SEC's report, Ms. Blaustein submitted more detailed and unredacted billing records. See Donna Blaustein's Response to Report Pertaining to

---

[3] This amount takes into account $1,380 in payment that Ms. Blaustein previously received. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 2 n. 3, 1/5/09).

DiSalvo Attorneys' Fees and Costs and Submission of Unredacted Statements (DE# 401-2, 1/20/09). Ms. Blaustein also increased the amount of fees she sought to account for an additional 7.2 hours of work on behalf of the Estate of Sheri DiSalvo for a total fee request of $15,510. She also requested additional costs for a total of $406 in costs. Id. Ms. Blaustein did not seek additional fees following the March 3, 2009 hearing. Ms. Blaustein states that her efforts were instrumental in securing funds for the defrauded investors. She points out that:

> without [her] actions in collecting and preserving the Estate assets in a restricted account and spearheading the petitions to approve the Settlement Agreement and to transfer the funds from the control of the Probate Court to the control of the Receiver out of the State of Florida, none of the monies would have been available either for the payment of the fees or for the Receiver to use in the payment of investors.

Id. at 2.

The undersigned has reviewed the billing entries and supporting documentation submitted by Ms. Blaustein. The undersigned finds that Ms. Blaustein's hourly rate of $300 is reasonable for an attorney of her experience. The undersigned has also reviewed the amount of time spent by Ms. Blaustein in the Florida probate matter and finds that the amount of time expended and costs incurred are reasonable. Thus, the undersigned finds **$15,510** in fees and **$406** in costs to be reasonable in the instant case for the work performed by Ms. Blaustein.

**2.    Donald W. Darst, Esq.**

**a.    The SEC's Recommendation**

Donald Darst is a California attorney retained by the DiSalvo brothers. In May 2008, Mr. Darst became counsel of record in the California action commended by the

9

Receiver. Following the Settlement Agreement, Mr. Darst sought fees in the amount of $41,775 (83.55 hours at $500 per hour). See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 9, 1/5/09). Of this amount, the SEC recommended that Mr. Darst receive $34,110 (75.8 at $450). Id. at 10. The SEC's recommended reduction was based on Mr. Darst's hourly rate of $500 (the SEC recommended that Mr. Darst's rate be reduced to $450) and the elimination of various billing entries which the SEC considered insufficiently detailed or related to the recovery of attorneys' fees. Mr. Darst also submitted costs in the amount of $2,625.50. The SEC recommended that no costs be awarded because Mr. Darst did not submit bills to support those costs.[4]

Mr. Darst objected to the SEC's report on various grounds. See Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4, 1/20/09). Mr. Darst took exception with the SEC's role in reviewing the DiSalvo Professionals' fees and costs. Id. at 1-2. According to Mr. Darst, the SEC improperly recommended that some of his fees be denied while allowing other DiSalvo Professionals to recover for the same tasks or the same costs. Id. at 2.  The undersigned will address Mr. Darst's arguments below.

**b.    Costs**

Mr. Darst's costs, totaling $2,625.50, stem from the deposition of Sarah

---

[4] Mr. Darst also submitted $925 in previously billed fees. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 9, 1/5/09). The SEC recommended that these previously billed fees be denied because Mr. Darst failed to provide an explanation for this amount.

Simmons. Ms. Simmons' deposition was integral to the DiSalvo's case. According to Mr. Darst, this deposition spurred the settlement negotiations between the Receiver and the DiSalvos. The costs consist of $405 in airfare to Las Vegas, Nevada and $2,220.50 in hotel charges for a three-night stay. According to Mr. Darst, the hotel costs were reasonable because he needed a sufficiently large room for the DiSalvo brothers, Mr. Gors and the DiSalvo's attorneys, to meet and strategize. The undersigned finds that while the costs incurred in taking Ms. Simmons' deposition were necessary, significant reductions to Mr. Darst's lodging expenses are warranted to make these costs reasonable. The undersigned finds that $2,220.50 in lodging is excessive. In order to determine reasonable costs for lodging, the undersigned looks to Title 28, United States Code, Section 1821 which provides that "[a] subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services . . . for official travel in the area of attendance by employees of the Federal Government." See 28 U.S.C. § 1821(d) (2).[5] For January 1 through May 31, 2008, the maximum per diem rate for Las Vegas, Nevada was $188 and $48 for the last day of travel. Mr. Darst spent three nights in Las Vegas, accordingly he will be allowed $564 for lodging and meals. Additionally, the undersigned will allow $48 for Mr. Darst's last day of travel. Accordingly, Mr. Darst should recover $612.00 for lodging, meals and incidental expenses and $405 in airfare, for a total of $1,017 in costs.

---

[5] While section 1821(a)(1) expressly applies to travel by a witness in attendance at any court of the United States or at deposition, and does not address travel expenses incurred by counsel, the undersigned looks to this statute as a guide to determine what reasonable travel expenses would be in the instant case.

### c.    Hourly Rate

Mr. Darst seeks an hourly rate of $500. Mr. Darst has been a member of the

California bar since 1980. He has extensive litigation and trial experience. Nonetheless,

the undersigned agrees with the SEC that Mr. Darst hourly rate is excessive and that

reductions to the fees requested by Mr. Darst are warranted. In order to determine a

reasonable and proper fee award, the Court must consider the number of hours

expended on the case together with the customary hourly fees charged in this

community for similar services. See Norman v. Housing Authority of City of

Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The Supreme Court has held that a

reasonable hourly rate is to be measured by "prevailing market rates in the relevant

community." Blum v. Stenson, 465 U.S. 886, 896 (1984). In determining the prevailing

market rates the Court should consider several factors including "the attorney's

customary fee, the skill required to perform the legal services, the attorney's

experience, reputation and ability, the time constraints involved, preclusion from other

employment, contingency, the undesirability of the case, the attorney's relationship to

the client, and awards in similar cases." Mallory v. Harkness, 923 F. Supp. 1546, 1555

(S.D. Fla. 1996) citing Dillard v. City of Elba, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993).

Additionally, the Court has requested that the undersigned "consider that the

professionals retained by the Receiver in this case have been retained at a discounted

hourly rate and that consideration should be included in any determination of

reasonableness of professional fees with respect to the DiSalvo Professionals." See

Order of Reference to Magistrate Judge (DE# 407 at 2, 1/22/09).

Mr. Darst requests an hourly rate of $500.00. Having considered the record, counsels' experience in the areas of the applicable law, the undersigned's familiarity with this litigation and attorneys' fees in general, the declaration of Tony Piazza, Esq. and Judge Huck's instructions to consider the reduced rates charged by the professionals retained by the Receiver, the undersigned finds that an hourly rate of $450.00 for Mr. Darst is reasonable. The undersigned recognizes that Mr. Darst is a skilled attorney with considerable litigation experience.

### d.    Initial Fee Request

Mr. Darst objects to the recommended denial of $925 (1.85 hours at $500) in previously billed fees. See Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 3, 1/20/09). With respect to this amount, Mr. Darst states as follows: "Those fees were generated as set forth on the prior month's billing statement. They had exclusively to do with the numerous DiSalvo matters I was handling." Id. at 3. The SEC recommended that the Court deny the $925 because "there are no accompanying bills explaining what the previously billed fees . . . were for . . . ." See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 9, 1/5/09). Mr. Darst's explanation adds little to assist the undersigned in determining the reasonableness of the $925 fee. Accordingly, the undersigned also recommends this fee be denied.

Mr. Darst further objections to the following recommended reductions made by the SEC.

| Date | Time Billed | Amount | Description |
|---|---|---|---|
| 6/6/08 | .3 | $150 | Review e-mail from Wayne [DiSalvo] regarding fees |
| 7/1/08 | 2 | $1,000 | Telephone conference with clients, Gors, Florida counsel regarding further actions, issues and planning |
| 7/5/08 | .5 | $250 | Telephone conference with Florida counsel, Gors, regarding further actions, issues and planning |
| 7/7/08 | 1.6 | $800 | Telephone conference with Gors regarding further actions by SF counsel, issues of client activity. Review Abraham's e-mail regarding further Santa Clara County necessary actions |
| 7/7/08 | .75 | $375 | Review various e-mails from Florida and SF counsel and e-mail from Gors. Dictate e-mail regarding SF proposals |
| 7/19/08 | 2 | $1,000 | Telephone conference with Gors. Analyze settlement, assignment issues/cases |
| 8/27/08 | .2 | $100 | Review email confirming that no fees were paid by clients from money they owed |
| 10/7/08 | .2 | $100 | Review Duane [DiSalvo]'s e-mail and Gors' response |
| 10/16/08 | .2 | $100 | Review e-mail from defense to Plaintiff's counsel. |

See Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 3-5, 1/20/09).

The SEC recommended that the June 6, 2008 entry be denied because it relates to attorneys' fees. The SEC reasoned that "[i]t does not seem fair or reasonable to use funds that otherwise would go to defraud investors to pay attorneys for time spent

14

seeking their own fees." <u>See</u> Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 4, 1/5/09). Mr. Darst explains that "this entry had nothing to do with attorneys' fee. It referred to bank fees that were required to transfer accounts at Comercia Bank as those fees had been addressed at [Mr. Darst's] meeting with the bank personnel and the DiSalvo brother." <u>See</u> Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 4, 1/20/09). The undersigned agrees with the SEC's reasons for denying all billing entries related to the recovery of attorneys' fees. However, since Mr. Darst's explanation shows that this billing entry does not relate to attorneys' fees, the undersigned recommends that Mr. Darst be permitted to recover $135 (.3 at $450) for reviewing the email.

The next billing entries Mr. Darst objects to are three telephone conferences that took place on July 1, 2008, July 5, 2008 and July 7, 2008. The SEC recommended that these billing entries be denied because Mr. Darst gave vague reasons for the telephone conferences. Mr. Darst responds that these entries describe who was involved, why their were involved and how long the conversation took place. Mr. Darst further notes that the SEC allowed Holland & Knight to recover for similar billing entries. <u>See</u> Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 4, 1/20/09). With respect to the telephone conference on July 1, 2008, Mr. Darst explains that "[it] came on the heels of the Simmons' deposition and anticipated the telephone call to me from Al Boro [regarding settlement discussions]. The strategy developed

during this telephone conference was the foundation for all future settlement discussions." Id. at 4. In light of Mr. Darst's supplemental explanations concerning the nature of these telephone calls, the undersigned finds that these billing entries totaling $1,845 (4.1 at $450) are reasonable.

Mr. Darst also seeks to recover .75 hours for an entry on July 7, 2008. The billing description is "[r]eview various e-mails from Florida and SF counsel and e-mail from Gors. Dictate e-mail regarding SF proposals." The SEC recommended that this billing entry be denied because Mr. Darst provided no reason for the correspondence. Mr. Darst responses that "[this] entry clearly states that [this] correspondence specifically concerned proposals presented to [Mr. Darst] by the attorneys in San Francisco."  See Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 5, 1/20/09). The undersigned finds that this billing entry is insufficiently detailed to support a finding of reasonableness. Next, Mr. Darst seeks to recover for two hours spent on a telephone conference with Mr. Gors and analyzing the settlement, assigned issues and cases. Mr. Darst explains that:

> [he] received a very rough, preliminary, draft of the Settlement Agreement on behalf of [his] clients . . . . It [wa]s quite lengthy and impacts every item at issue between the Plaintiff and the DiSalvo Defendants. Two hours is not an unreasonable amount of time to spend analyzing that detailed and complex document. Additionally, the settlement document involves all of the pending litigation in all of the various Courts. Therefore, in reviewing the document, an analysis of who was going to the necessary remaining tasks, and in which Courts, was necessary.

Id. In light of Mr. Darst's more detailed explanation, the undersigned finds that Mr. Darst should recover the full two hours for this time entry, $900 (2 at $450).

16

Lastly, Mr. Darst objects to three billing entries of .2 each for reviewing email on August 27, 2008, October 7, 2008 and October 16, 2008. See Donald W. Darst's Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-4 at 5, 1/20/09). The SEC recommended that the first email be denied because it concerned attorneys' fees and recommended that the other two entries be denied for insufficient detail. With respect to the first billing entry, Mr. Darst responds that "[t]his entry had to do with the client's source of funds then on deposit with Comercia Bank from which they had paid attorneys retained by them in the past. It had nothing to do with any current attorney's fee request for payment." Id. In light of Mr. Darst's explanation, the undersigned finds that Mr. Darst should recover $90 (.2 at $450) for this billing entry. The other two billing entries on October 7, 2008 and October 16, 2008 should be denied for insufficient detail. Mr. Darst notes that "[t]hese entries state who generated and received the underlying communications and how long it took for [Mr. Darst] to review them. [The SEC] approved the billings of Holland & Knight that used virtually the same language." Id. at 6. Without more information concerning the nature of these communications, the undersigned cannot determine whether these billing entries are reasonable. Accordingly, the undersigned recommends that the October 7, 2008 and October 16, 2008 billing entries be denied. In sum, the undersigned recommends that Mr. Darst recover an additional $2,970.00 (6.6 hours at $450) in his initial fee request based on the supplemental fee information provided by Mr. Darst.

### e.   Additional Fees

On March 17, 2009, Mr. Darst filed additional fees totaling $10,850 (27 hours at $500) for the period of October 27, 2008 through March 3, 2009. See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 2, 3/17/09). Mr. Darst did not seek additional costs. Id.

The undersigned has reviewed Mr. Darst's additional billing entries and finds that the November 5, 2008 billing entry "Execute Declaration" should be disallowed for lack of specificity. The remaining entries, at the reduced hourly rate, appear reasonable. Accordingly, Mr. Darst should recover $9,675 (21.7 minus .2 at $450).

In sum, the undersigned finds that **$46,755** (103.9 hours at $450) in fees and **$1,017** in costs are reasonable for the work performed by Mr. Darst.

### 3.   Michaelson & Co., PA

Michaelson & Co, PA (hereinafter "Michaelson") conducted the forensic analysis of Sheri DiSalvo's personal and business records. Michaelson was retained by Seal-Mar Protection Services to determine if Sheri DiSalvo had diverted any investor funds for her own personal use and, if so, to detail the diverted funds and provide the total amount of those diverted funds.

Michaelson sought reimbursement of $43,693.75 in professional fees and $963.50 in costs. The SEC's report recommended that Michaelson recover full costs and $2,643.75 in fees for certified public accountant William M. Michaelson's work. With respect to the remaining $41,050 in professional fees, the SEC recommended that Michaelson submit biographies and descriptions of the work performed by other

employees.

On January 20, 2009, Michaelson responded to the SEC's report. See Michaelson & Co., P.A.'s Response and Objections to Plaintiff's Report to Court on Attorney Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-9, 1/20/09). Michaelson states that the outstanding balance for the services it rendered can be divided as follows: $26,354.05 for work performed to arrive at its conclusion that Sheri DiSalvo had diverted investor funds and $18,303.20 to assist Seal-Mar and Richman Greer in negotiating a settlement with the Receiver. Id. "Had it not been for the work we performed and the immediate response of Seal-Mar and Richman Greer . . . hundreds of thousands of additional dollars would have been expended that would not have found their way to the investors." Id. at 2.

Michaelson's response to the SEC's report explains that the hourly rates of its staff range from $100 to $225 per hour, that staff is often utilized to provide input and analysis to keep costs down and that all work is reviewed twice before any final opinions or conclusions are rendered. Michaelson objects to the SEC's recommendation noting that the SEC "ha[d] not even seen or reviewed [its] work product" when it recommended reductions to the Court. Id. at 3. Michaelson did not seek additional fees or costs after the March 3, 2009 hearing.

When Michaelson initially submitted its fees, it included one curriculum vitae for William M. Michaelson. Because Michaelson failed to submit information on the qualifications of the other individuals who worked on the case, the SEC recommended that only Mr. Michaelson's fees be reimbursed in full. The SEC further recommended that Michaelson be provided with an opportunity to support the remaining fees for work

19

performed by others in the Michaelson firm through subsequent filings. On March 17, 2009, Michaelson submitted a detailed description of the manner in which it prepared the forensic report in the instant case and how the individuals at Michaelson worked together. Michaelson further submitted the curricula vitae of William M. Michaelson and Phillip G. Michaelson and resumes for Janet C. Cohen and Gail M. Bromfield. Michaelson did not submit a resume for work performed by an individual named Feaman. Because the undersigned has no way of analyzing Feaman's qualifications and thereby determine whether Feaman's hourly rate and work was reasonable, the undersigned cannot find that Feaman's fees ($1,100) are reasonable and recommends that Feaman's fees be disallowed.

The undersigned agrees with the SEC that William Michaelson's fees are reasonable. The undersigned further finds that the hourly rates charged by Phillip Michaelson, Janet Cohen and Gail Bromfield are also reasonable. Phillip Michaelson charges an hourly rate of $120, Ms. Cohen's hourly rate is $145 and Ms. Bromfield's hourly rate is $100. Phillip Michaelson has an MBA in accounting and five years of experience as an accountant or controller. Ms. Cohen has been an accountant since 1970 and has extensive experience in litigation support. Ms. Bromfield's educational background is in financial accounting. She has approximately 20 years in bookkeeping and accounting related work experience.

The undersigned has reviewed the educational training and background of these individuals and finds that the hourly rates charged are reasonable. The undersigned has also reviewed the detailed billing description submitted by Michaelson and considered the necessity of the forensic report in facilitating the Settlement Agreement

reached by the parties. Accordingly, the undersigned finds **$42,593.75** in fees and

**$963.50** in costs to be reasonable for the work performed by Michaelson.

4.     **Kevin Gors/ Seal-Mar Protection Services**

Kevin Gors is a private investigator and principal of Seal-Mar Protection Services

(hereinafter "Seal-Mar"). Mr. Gors coordinated much of the legal efforts on behalf of the

DiSalvo brothers, their wives and the Estate of Sheri DiSalvo. Mr. Gors also served as

the client contact for the other DiSalvo Professionals and assisted with the forensic

investigation of Sheri DiSalvo's assets. Mr. Gors' initial professional fee request was

$63,343.94 ($52,600 in fees and $10,743.94 in costs).[6] Mr. Gors did not seek additional

fees and costs following the March 3, 2009 hearing.

The SEC's report recommended that the Court deny Mr. Gors' fee request

because the bills he submitted were insufficiently detailed, the handwritten notes

submitted by Mr. Gors were difficult to read and partially redacted and Seal-Mar

appeared to charge both an hourly rate and a daily fee. See Plaintiff's Report to Court

on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants

(DE# 381 at 12 - 13, 1/5/09). The SEC also questioned Mr. Gors' $250 hourly rate,

noting that it has hired private investigators in the past for rates ranging from $45 to

$150 an hour. Id. at 13.

On March 10, 2009, Mr. Gors filed a typed copy of his redacted handwritten

notes. See Notice of Filing Kevin Gors' Redacted Handwritten Notes (DE# 484,

3/10/09). Mr. Gors further filed his response to the SEC's report on March 17, 2009.

---

[6] This amount takes into account a $50,000 retainer.

See Kevin Gors' Response and Objections to Plaintiff's Report to Court on Attorney

Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401 at

Exhibit 3, 1/20/09).

The undersigned first addresses Mr. Gors' requested hourly rate. It is undisputed

that Mr. Gors has substantial experience as a private investigator and that his efforts

led to the location and preservation of Sheri DiSalvo's assets which will ultimately go to

the defrauded investors. Nonetheless, a reduction in Mr. Gors' hourly rate is necessary

in order to make Mr. Gors fees more in line with fees for private investigative services

and to account with the Court's directive that the undersigned take into consideration

the reduced hourly rates charged by the professionals retained by the Receiver.

Accordingly, the undersigned recommends that Mr. Gors' hourly rate be reduced to

$200.

In addition to billing at an hourly rate, there were some instances where Mr. Gors

billed $2,500 as a flat daily rate. Mr. Gors has explained that for those tasks, he billed a

flat rate as a courtesy to the client because it would be less than billing at an hourly rate

for the amount of time he spent on that task. Taking this into consideration, the

undersigned will reduce Mr. Gors' daily rate to $2,000 (10 hours at $200).

In addition to a reduction in the hourly or daily rate, the undersigned further

recommends that certain billing entries be disallowed for lack of detail.[7] The

undersigned has carefully reviewed the billing entries submitted by Mr. Gors and finds

that 73.2 hours constitute billing entries where information is not sufficient for the

---

[7] The undersigned was able to ascertain some information concerning Mr. Gors' activities from the billing entries of other DiSalvo Professionals.

undersigned to determine reasonableness. These billing entries were reduced as follows.

| Billing Month | Hours Sought | Additional Days | Hours Disallowed | Recommended Total |
|---|---|---|---|---|
| June 2008 | 83.2 | 2 | 35.4 | 47.8 + 2 days |
| July 2008 | 75.1 | 0 | 5.4 | 69.7 |
| August 2008 | 38 | 1 | 5.3 | 32.7 + 1 day |
| September 2008 | 82.9 | 0 | 9.3 | 73.6 |
| October 2008 | 64.7 | 3 | 11.3 | 53.4 + 3 days |
| November 2008 | 6.5 | 0 | 6.5 | 0[8] |
| Total: | 350.4 | 6 | 73.2 | 277.2 + 6 days |

Thus, Mr. Gors is entitled to fees totaling $67,440 (277.2 times $200 plus 6 days times $2,000). From this amount, the undersigned will subtract the $50,000 retainer. Thus, reasonable fees for Mr. Gors' work in the instant case total **$17,440**.

Mr. Gors seeks to recover $10,743.94 in costs. This amount includes $1,110.51 which he describes as "expenses carried over" in the June 2008 billing statement. Because Mr. Gors provides no details concerning the nature of these expenses, the undersigned cannot determine whether they were reasonably incurred. As such, the undersigned recommends that these prior expenses be disallowed. The undersigned further recommends that Mr. Gors' travel expenses be disallowed. Unlike the other DiSalvo Professionals who provided an itemized list of their costs, Mr. Gors submits a

---

[8] The undersigned disallowed Mr. Gors' November 2008 hours because he did not provide a typed copy of the November billing entries as requested by the undersigned. See Notice of Filing Kevin Gors' Redacted Handwritten Notes (DE# 484, 3/10/09).

lump sum item for all travel expenses. For instance, in the June 2008 billing statement, Mr. Gors lists the following expenses: "Air/Hotel/Car/Meals/Parking/etc. (CA and LV trips) = $4,598.48." Mr. Gors' October 2008 bill contains a similar expense item "Air/Car/Meals/Parking etc = $2,284.95." These entries do not allow the undersigned to determine how much Mr. Gors incurred for each category (i.e. airfare, lodging, meals). However, based on Mr. Gors' billing entries the undersigned can determine that Mr. Gors traveled to San Francisco from June 16 - 17, 2008 and from October 22-24, 2008. As with the other DiSalvo Professionals, the undersigned will apply the maximum per diem rates of $216 per night and $48 for the last day of travel for the June 2008 trip for a total of $528.[9] The maximum per diem rates for the October 2008 trip were $249 per day and $48 for the last day of travel for a total of $546. Mr. Gors' billing records do not reflect his trip to Las Vegas, thus the undersigned cannot determine reasonable travel expenses for that trip. Mr. Gors should recover $1,074 in total travel expenses. Mr. Gors' remaining expenses are $2,150 for "computer work (Simmons, Sterling)" and $600.00 for "Paid Deposit to Shutter Company FOB Oceania." Without additional information, the undersigned cannot determine whether these expenses were reasonable. Accordingly, the undersigned agrees with the SEC and recommends that the additional costs for Mr. Gors be denied.

In sum, the undersigned recommends that Mr. Gors recover **$17,440** in fees and **$1,074** in costs.

---

[9] The undersigned cannot determine airfare from Mr. Gors' billing records.

5.    **Thirkell Law Group**

Thirkell Law Group (hereinafter "Thirkell") is the California law firm that was involved in the California Probate Action. It sought $9,405 in fees and $82.42 in costs. The SEC recommended that Thirkell recover $8,191.50 in fees and full costs. The SEC recommended a $1,213.50 fee reduction because it found some time entries were insufficiently detailed, consisted of clerical work or related to fees and costs. Thirkell did not file an objection to the SEC's report.

On March 17, 2009, Thirkell filed additional billing entries for the period of November 20, 2008 through March 11, 2009. Thirkell's additional fees total $3,182.50 and $115.16 in costs. Thirkell's costs consist of postage, courier service and costs of obtaining deeds. The undersigned finds that the costs incurred by Thirkell are reasonable and that Thirkell should recover full costs.

The undersigned has reviewed the initial fees and costs submitted by Thirkell and agrees with the SEC that $8,191.50 in fees and $82.42 in costs are reasonable. The undersigned does not address the  $1,213.50 reduction recommended by the SEC since Thirkell did not file an objection to this amount. With respect to the additional fees and costs sought by Thirkell, the undersigned finds that a $1,205 reduction in additional fees is warranted. These reductions are as follows.

| Date | Description | Amount | Reason |
|------|-------------|--------|--------|
| 11/20/08 | Draft declaration regarding fees requested by court | $75.00 | Relating to Fees |
| 11/20/08 | Finalize declaration regarding fees; scan & sent to Richman Greer | $42.00 | Relating to Fees/ clerical work |

| 12/12/08 | Review emails from Richman Greer regarding invoices & info needed | $75.00 | Appears to relate to Fees/ insufficient detail |
|---|---|---|---|
| 12/12/08 | Copy & scan declaration of EDT & firm bio; draft email to Lydia at Richman Greer with documents | $56.00 | Appears to relate to Fees/ clerical work |
| 1/28/09 | Review Richman Greer's request for hearing & fee petitions | $75.00 | Relating to Fees |
| 2/2/09 | Conference with EDT regarding status of closure & outstanding fees | $57.00 | Relating to Fees |
| 3/3/09 | Attend by telephone, Miami Court, regarding attorneys' fees | $750.00 | Relating to Fees |
| 3/4/09 | Review order after yesterday's hearing & email to Hannan | $75.00 | Relating to Fees |
| | Total: | **$1,205** | |

See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 47, 3/17/09). Thus, Thirkell should recover $1,977.50 ($3,182.50 minus $1,205) in additional fees. Accordingly, the undersigned finds that total reasonable fees for Thirkell are **$10,169** ($8191.50 plus $1,977.50) and **$197.58** in costs, for a total of **$10,366.58**.

6.    **Holland & Knight LLP**

Holland & Knight LLP (hereinafter "Holland & Knight") represented Candy DiSalvo. Holland & Knight initially submitted $15,566 in fees and $6.32 in costs to the SEC. The SEC recommended that Holland & Knight recover $13,244 and full costs.

26

The SEC recommended certain reductions for insufficient detail and entries related to the payment of fees. Holland & Knight did not file objections to the SEC's report.  The undersigned has reviewed the initial billing entries and supporting documentation submitted by Holland & Knight. The undersigned agrees with the reductions made by the SEC and finds the $430 hourly rate to be reasonable. Accordingly, the undersigned finds that a reasonable recovery for the work performed by Holland & Knight to be $13,244 in initial fees and $6.32 in costs.

Holland & Knight seeks additional fees totaling $5,848.00 for work performed from December 9, 2008 through March 13, 2009. See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 5, 3/17/09). The undersigned finds that substantial reductions to the additional fees submitted by Holland & Knight are necessary to account for vague descriptions and billing entries relating to the recovery of fees in this matter. The undersigned recommends that the following additional billing entries be disallowed.

| Date | Description | Time | Reason |
|------|-------------|------|--------|
| 12/9/08 | Attention to matter; communicate to and from M. Goldberg regarding status; follow up on request of Mr. Goldberg concerning submissions; attention to motion and declaration; follow up concerning same. | .60 | Vague |
| 12/10/08 | Attention to matter; preparation for transmission of motion and declaration to M. Goldberg; correspondence to M. Goldberg regarding matter and motion; attention to follow up with client C. DiSalvo. | .60 | Vague |

| 1/12/09 | Correspondence from S. O'Grady from plaintiff's office regarding Order continuing Hearing attention to issues regarding fee assessment; evaluate same; attention to action and research of court websites regarding status of matter and follow up; communications with client. | 2.20 | Relating to fees[10] |
|---|---|---|---|
| 1/23/09 | Attention to matter; communication to and from M. Goldberg regarding matter; attention to referral to magistrate, review of court website; attention to follow up. | .40 | Vague |
| 1/28/09 | Communications to and from M. Goldberg regarding status of matter and additional information; receipt of report from SEC regarding Fees; review and analyze report; attention to assertions and recommendations; follow up with client regarding same; attention to additional action regarding supplemental fees and objection | 1.80 | Relating to fees |
| 2/3/09 | Receipt of correspondence from S. Grady, Esq. With proposed stipulation and requesting further action; review same | .20 | Vague |
| 2/9/09 | Correspondence from plaintiff's office (C. Schmitz) regarding court action and documents | .10 | Vague |
| 3/3/09 | Attention to numerous communications from counsel; participate in lengthy hearing in front of the Magistrate regarding fees and issues; attention to follow up action requested by court. | 2.60 | Relating to fees |
| 3/10/09 | Attention to supplemental billings; preparation of date for court; draft reviewed documents for submission to Richman Greer | 1.70 | Relating to fees |

---

[10] Although the billing entry may not entirely pertain to fees, counsel's use of block billing makes it impossible for the undersigned to determine how much time was spent on the recovery of fees. Therefore, the undersigned recommends that the entire entry be disallowed.

| 3/13/09 | Finalize documents and submit to Richman Greer | 1.40 | Appears to relate to fees/ vague |
|---|---|---|---|
| | Total: | **11.6** | |

Thus, the undersigned recommends that Holland & Knight recover $860 (2 hours at $430) in additional fees. Holland & Knight does not seek additional costs.  Accordingly, the undersigned finds reasonable fees for Holland & Knight to total **$14,104** ($13,244 plus $860) and **$6.32** in costs.

## 7.    Richman Greer, P.A.

Richman Greer, P.A. (hereinafter "Richman") seeks $406,523.50 in total fees and $10,043.20 in costs. Richman's initial fees request was $276,764.50[11] for the main litigation, $96,548.50 for the probate litigation, $6,691.14 in costs for the main litigation and $2,562.15 in costs for the probate litigation. The SEC recommended that a majority of the requested fees be denied and that Richman recover $93,538.61 (including costs). The SEC's recommended reductions were based on insufficiently detailed billing entries and work related to the payment of fees and clerical or administrative work. The SEC made a $180,000 reduction for payments already made to the firm.

On January 20, 2009, Richman filed its objections to the SEC's report. See Richman Greer P.A.'s Objections to the "Plaintiff's [SEC] Report to Court on Attorneys'

---

[11] Page 34 of the SEC's report indicates that the fees sought in the main litigation total $276,774.50. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 34, 1/5/09). This appears to be a typographical error. On page 18 of the report the SEC correctly notes that the fees for the main litigation total $276,764.50. Id. at 18; see also Exhibit A(4) at 9 (listing total for main litigation fees as $276,764.50).

29

Fees Related to the Receiver's Settlement with the DiSalvo Defendants" (DE# 401-10, 1/20/09). Richman argued that the SEC applied the wrong standard in determining its reasonable hourly rate, arguing that the hourly rates of attorneys for the government are not relevant in determining the hourly rates of the DiSalvo Professionals. Id. at 6. For the reasons stated above, the undersigned is not persuaded by this argument.

With respect to the reasonableness of the hours billed, Richman attacked the reductions the SEC made for billing entries related to the recovery of attorneys' fees. See Richman Greer P.A.'s Objections to the "Plaintiff's [SEC] Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants" (DE# 401-10 at 9-10, 1/20/09). Richman noted that of the amount the SEC recommended reduced as related to the recovery of attorneys' fees, $15,502.50 was for work on a fee petition filed in the probate court for the DiSalvos to receive continued legal representation. Id. at 9-10. The fee petition in the probate court occurred before the Settlement Agreement with the Receiver was reached. Id. at 10. Richman further argued that it should be entitled to recover for work to obtain attorneys' fees related to the Settlement Agreement noting that because the Settlement Agreement allows for the recovery of reasonable attorneys' fees, the amount billed to recover attorneys' fees was related to the enforcement of the Settlement Agreement.[12] The undersigned disagrees

---

[12] Richman argued that "this process [of recovering its fees] that ha[d] been thrust upon Richman Greer [wa]s a process directly derivative of the Receiver's settlement with the DiSalvo Defendants, Richman's clients." See Richman Greer P.A.'s Objections to the "Plaintiff's [SEC] Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants" (DE# 401-10 at 10, 1/20/09). The undersigned disagrees with the characterization that this process was "thrust upon" Richman and notes that Richman actively participated in negotiating the terms of the Settlement Agreement including the recovery of its fees.

with Richman on both counts and finds that fees for obtaining fees either in the probate matter or pursuant to the Settlement Agreement with the Receiver are not reasonable under the facts of the instant case where the money to pay the DiSalvo's legal fees would otherwise go to the defrauded investors. Under these facts, billing entries related to the recovery of fees are not reasonable.

Richman further argues that it should recover fees for administrative or clerical work. See Richman Greer P.A.'s Objections to the "Plaintiff's [SEC] Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants" (DE# 401-10 at 10-11, 1/20/09). The undersigned finds that administrative or clerical work such as work for organizing files is not reasonable and will recommend that it be disallowed.

Lastly, Richman objected to the SEC's recommendation that Richman not resubmit more detailed billing descriptions to the Court. See Richman Greer P.A.'s Objections to the "Plaintiff's [SEC] Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants" (DE# 401-10 at 11, 1/20/09). Richman noted that other DiSalvo Professionals were permitted to resubmit more detailed bills and that to the extent its fees were disallowed for being "insufficiently detailed" a more specific explanation of the work performed would remedy the defect. Id. The undersigned agreed with Richman and allowed Richman to submit more detailed billing entries. See Order (DE# 475, 3/3/09).

On March 3, 2009, Richman filed supplemental billing records and additional billings records, from December 1, 2008 through February 27, 2009. See Richman Greer, P.A.'s Notice of Filing Supplemental Detailed Time Entries Pursuant to Court

31

Order Dated March 3, 2009 (DE# 495, 3/17/09); Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 1, 3/17/09). Richman also filed the affidavit of D. Culver Smith, III, Esq. in support of attorney Gerald F. Richman's requested hourly rate. See Notice of Filing Expert Affidavits Pursuant to Court Order Dated March 3, 2009 (DE# 497 at Exhibit 1, 3/17/09).

     a.    **Initial Fees - Main Litigation (March 2008 - November 2008)**

As noted above, Richman's initial fee request was $276,764.50 for the main litigation. Of this amount, the SEC recommended that $77,556.90 be disallowed for insufficient detail, work related to the recovery of fees and costs or non-substantive administrative work. On March 17, 2009, Richman submitted supplemental time entries for Gerard F. Richman, Gary S. Betensky, Charles H. Johnson, Michael J. Napoleone and Eric M. Sodhi providing the Court with additional information concerning the nature of these billing entries.

The undersigned agrees with the SEC that billing entries related to the recovery of fees, including the fee application filed in the probate matter, should be disallowed for the reasons discussed above. The undersigned has carefully reviewed the supplemental billing entries submitted by Richman and finds that based on the additional information concerning the worked performed some of these billing entries should be allowed as reasonable. However, reductions are still warranted as follows:

| FEES DISALLOWED FOR MAIN LITIGATION | | | | |
|---|---|---|---|---|
| **Page** | **Date** | **Atty** | **Amt** | **Reason** |
| A(4) at 13 | 3/3/08 | CHJ | $127.50 | No additional/ insufficient explanation provided in supplemental filing |

| A(4) at 16 | 3/5/08 | CHJ | $127.50 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 28 | 3/17/08 | EMS | $400 | Related to the recovery of fees[13] |
| A(4) at 29 | 3/17/08 | GSB | $40 | Related to the recovery of fees |
| A(4) at 42 | 4/2/08 | GSB | $120 | Related to the recovery of fees |
| A(4) at 56 | 5/13/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 56 | 5/13/08 | GSB | $40 | Related to the recovery of fees |
| A(4) at 56 | 5/22/08 | EMS | $25 | Related to the recovery of fees |
| A(4) at 61-62 | 5/22/08 | YYR | $375 | Related to the recovery of fees |
| A(4) at 62 | 5/22/08 | GSB | $120 | Related to the recovery of fees |
| A(4) at 62 | 5/22/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 63 | 5/23/08 | YYR | $750 | Related to the recovery of fees |
| A(4) at 64 | 5/27/08 | YYR | $750 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 66 | 5/28/08 | YYR | $600 | Related to the recovery of fees |
| A(4) at 68 | 5/30/08 | EMS | $125 | Related to the recovery of fees |
| A(4) at 68 | 5/30/08 | CHJ | $127.50 | Related to the recovery of fees |
| A(4) at 69 | 5/30/08 | GFR | $1,190 | Related to the recovery of fees |
| A(4) at 74 | 6/2/08 | GSB | $40 | Related to the recovery of fees |
| A(4) at 74 | 6/2/08 | YYR | $1,110 | Related to the recovery of fees |
| A(4) at 74 | 6/3/08 | JMW | $70 | Related to the recovery of fees |
| A(4) at 74 | 6/3/08 | JMW | $210 | Related to the recovery of fees |
| A(4) at 74 | 6/3/08 | EMS | $75 | Related to the recovery of fees |
| A(4) at 74 | 6/3/08 | EMS | $100 | Related to the recovery of fees |

---

[13] Some of Richman's disallowed block billing entries include tasks that are not solely related to the recovery of attorneys' fees. However, because the undersigned is unable to separate the attorneys' fee work from the allowable work, the undersigned recommends that the entire entry be disallowed.

| A(4) at 75 | 6/3/08 | GSB | $40 | Related to the recovery of fees |
|---|---|---|---|---|
| A(4) at 75 | 6/3/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 75 | 6/3/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 75 | 6/3/08 | YYR | $600 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | JMW | $448 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | JMW | $70 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | JMW | $70 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | EMS | $150 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | EMS | $125 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | GSB | $320 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | GFR | $1,071 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | JMW | $98 | Related to the recovery of fees |
| A(4) at 75 | 6/4/08 | AMM | $550 | Related to the recovery of fees |
| A(4) at 77 | 6/5/08 | EMS | $100 | Related to the recovery of fees |
| A(4) at 77 | 6/5/08 | EMS | $75 | Related to the recovery of fees |
| A(4) at 77 | 6/5/08 | GSB | $200 | Related to the recovery of fees |
| A(4) at 77 | 6/5/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 77 | 6/5/08 | GSB | $200 | Related to the recovery of fees |
| A(4) at 78 | 6/5/08 | GFR | $535.50 | Related to the recovery of fees |
| A(4) at 78 | 6/6/08 | JMW | $280 | Related to the recovery of fees |
| A(4) at 78 | 6/6/08 | GFR | $119 | Related to the recovery of fees |
| A(4) at 78 | 6/9/08 | JMW | $1,078 | Related to the recovery of fees |
| A(4) at 79 | 6/9/08 | GSB | $40 | Related to the recovery of fees |
| A(4) at 79 | 6/10/08 | EMS | $150 | Related to the recovery of fees |
| A(4) at 80 | 6/10/08 | JMW | $350 | Related to the recovery of fees |
| A(4) at 80 | 6/10/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 80 | 6/10/08 | GSB | $80 | Related to the recovery of fees |

| A(4) at 80 | 6/11/08 | EMS | $75 | Related to the recovery of fees |
|---|---|---|---|---|
| A(4) at 80 | 6/11/08 | EMS | $125 | Related to the recovery of fees |
| A(4) at 80-81 | 6/11/08 | EMS | $75 | Related to the recovery of fees |
| A(4) at 85 | 6/27/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 91-92 | 7/7/08 | GSB | $160 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 95 | 7/15/08 | GFR | $535.90 | Related to the recovery of fees |
| A(4) at 96 | 7/16/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 97 | 7/22/08 | GFR | $59.50 | Related to the recovery of fees |
| A(4) at 98 | 7/23/08 | GFR | $178.50 | Related to the recovery of fees |
| A(4) at 98 | 7/25/08 | GFR | $178.50 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 111 | 8/27/08 | GSB | $240 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 116 | 9/2/08 | GSB | $160 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 118 | 9/11/08 | EMS | $75 | Related to the recovery of fees |
| A(4) at 119 | 9/11/08 | EMS | $175 | Related to the recovery of fees |
| A(4) at 119 | 9/14/08 | GFR | $119 | No additional/ insufficient explanation provided in supplemental filing |
| A(4) at 119 | 9/15/08 | GSB | $120 | Related to the recovery of fees |
| A(4) at 120 | 9/15/08 | EMS | $225 | Related to the recovery of fees |
| A(4) at 138 | 10/28/08 | GFR | $654.50 | Related to the recovery of fees |
| A(4) at 139 | 10/30/08 | GSB | $120 | Related to the recovery of fees |
| A(4) at 139 | 10/31/08 | GSB | $120 | Related to the recovery of fees |
| A(4) at 147 | 11/10/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 147 | 11/11/08 | GFR | $59.50 | Related to the recovery of fees |
| A(4) at 149 | 11/17/08 | GSB | $120 | Related to the recovery of fees |

| A(4) at 149 | 11/18/08 | GFR | $1,190 | Related to the recovery of fees |
|---|---|---|---|---|
| A(4) at 150 | 11/18/08 | EMS | $100 | Related to the recovery of fees |
| A(4) at 150 | 11/18/08 | EMS | $100 | Related to the recovery of fees |
| A(4) at 151 | 11/19/08 | EMS | $1,100 | Related to the recovery of fees |
| A(4) at 151 | 11/19/08 | GSB | $40 | Related to the recovery of fees |
| A(4) at 151-52 | 11/19/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 152 | 11/19/08 | GSB | $240 | Related to the recovery of fees |
| A(4) at 152 | 11/20/08 | EMS | $225 | Related to the recovery of fees |
| A(4) at 152 | 11/20/08 | GSB | $425 | Related to the recovery of fees |
| A(4) at 152-53 | 11/20/08 | GSB | $80 | Related to the recovery of fees |
| A(4) at 153 | 11/20/08 | GSB | $160 | Related to the recovery of fees |
| A(4) at 153 | 11/21/08 | GFR | $119 | Related to the recovery of fees |
| A(4) at 153 | 11/21/08 | GSB | $240 | Related to the recovery of fees |
| | | **Total:** | **$22,066.40** | |

In light of the supplemental information provided by Richman, the undersigned concludes that $55,490.50 ($77,556.90 minus $22,066.40) should be allowed in addition to the main litigation fees recommended by the SEC.  The undersigned must reduce this amount by $7,329.75 (50.55[14] times $145) to $48,160.75 to account for Mr.

---

[14] Mr. Richman billed a total of 139.3 hours in the main litigation. See Exhibit A(4) at 9. Of this amount, the SEC allowed a total of 79.9 hours (79.6 in the main litigation and .3 hours in the probate litigation). See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 34, 1/5/09).  According to the undersigned's calculations, the SEC disallowed 60.65 hours. There is a small variance of 1.25 hours between the 79.9 hours allowed in the SEC's report and the 78.65 (139.3 minus 60.65) hours allowed as calculated by the undersigned. The hours disallowed by the undersigned for Mr. Richman in the above chart total 10.1. Thus, the hours allowed by the undersigned for Mr. Richman in the

Richman's reduced hourly rate. Accordingly, Richman should recover $48,160.75 in fees in addition to the initial main litigation fees recommended by the SEC in its report. In sum, the undersigned finds **$235,826.35** ($187,665.60 plus $48,160.75) to be a reasonable fee for Richman's main litigation fees for work performed between March and November 2008.

Richman also seeks $6,691.14 in costs for the main litigation. The SEC recommended that Richman recover its costs for the main litigation with the exception of $301.78 related to meals with attorneys from other firms. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 30, 1/5/09). Thus, the amount of costs for the main litigation that the SEC recommended be recovered by Richman total $6,389.36 ($6,691.14 minus $301.78).

As with the costs sought by the other DiSalvo Professionals, the undersigned finds that additional reductions are warranted related to lodging and meals for the deposition of Sarah Simmons in Las Vegas, Nevada. Richman billed $977.73 for lodging and $111.26 ($25 plus $86.26) in meals. According to Mr. Betensky's billing records he arrived in Las Vegas on May 28, 2008 and returned to Florida on June 2, 2008. Thus, he spent a total of five nights in Las Vegas. Accordingly, the undersigned will allow $ 940 ($188 times 5 nights) for lodging, meals and incidental expenses and $48 for the last day of travel pursuant to the per diem rates approved by the General Services Administration. See 28 U.S.C. § 1821(d)(2), discussed supra. Thus, Richman

---

main litigation, that were previously disallowed in the SEC's report, total 50.55 (60.65 minus 10.1).

is entitled to recover $988 in costs related to travel to Las Vegas. The undersigned will reduce the costs sought by Richman to **$6,288.37** ($6,389.36 minus lodging and meals costs of $1,088.99 plus $988 in allowable lodging and meals).

### b.    Initial Fees - Probate Litigation (March 2008 - November 2008)

Richman also sought $96,548.50 for work related to the probate matter. The probate work was primarily undertaken by attorney Charles H. Johnson and paralegal Isabel R. Nunez. The undersigned has reviewed Mr. Johnson's background and finds that his hourly rate of $425 is reasonable for an attorney with more than 30 years of experience and board certification in the areas of wills, trusts and estates. The undersigned also finds Ms. Nunez's hourly rate of $140 to be reasonable. A small reduction in the hourly rate of attorney John M. Brumbaugh is necessary. Mr. Brumbaugh's hourly rate is $475.00 The undersigned finds that a more reasonable hourly rate, in light of the hourly rates charged by counsel for the Receiver, is $450.00. Accordingly, Mr. Brumbaugh's hourly rate should be reduced to $450.00.

The SEC recommended a $19,581[15] reduction. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 34, 1/5/09). These reductions were recommended for insufficient billing information and work related to the recovery of attorneys' fees and administrative work. Id. at 31-34.  Richman has since submitted supplemental billing records. See Supplemental Time Entries for Charles H. Johnson, Esquire, Richman Greer, P.A., Pursuant to Court Order Dated March 3, 2009 (DE# 495-4, 3/17/09). The undersigned

---

[15] In the SEC's report, the reduction is for $19,581.00. However, the actual amount disallowed totals $19,581.50.

has carefully reviewed these records and finds that the fees sought are reasonable, in light of the additional information provided by Richman, with the exception of the following:

| FEES DISALLOWED FOR PROBATE LITIGATION | | | | |
|---|---|---|---|---|
| Page | Date | Biller | Amt | Reason |
| A(5) at 25 | 5/14/08 | CHJ | $85 | Related to the recovery of fees |
| A(5) at 30-31 | 5/27/08 | CHJ | $170 | Related to the recovery of fees |
| A(5) at 31 | 5/27/08 | GSB | $80 | Related to the recovery of fees |
| A(5) at 32 | 5/30/08 | CHJ | $1,105 | Related to the recovery of fees |
| A(5) at 32 | 5/30/08 | CHJ | $1,190 | Related to the recovery of fees |
| A(5) at 37 | 6/2/08 | GFR | $178.50 | Related to the recovery of fees |
| A(5) at 37 | 6/4/08 | CHJ | $467.50 | Related to the recovery of fees |
| A(5) at 39 | 6/20/08 | IRN | $14 | Administrative work |
| A(5) at 47 | 7/1/08 | IRN | $308 | Administrative work[16] |
| A(5) at 48 | 7/10/08 | IRN | $42 | Administrative work |
| A(5) at 49 | 8/1/08 | IRN | $28 | Administrative work |
| A(5) at 49 | 8/4/08 | IRN | $42 | Administrative work |
| A(5) at 50 | 8/22/08 | IRN | $28 | Administrative work |
| A(5) at 64 | 11/18/08 | CHJ | $85 | Related to the recovery of fees |
| | | Total: | $3,823.00 | |

Accordingly, Richman should recover $15,758.50 ($19,581.50 minus $3,823.00) in fees in addition to the initial probate litigation fees recommended by the SEC in its report.

---

[16] Part of the work performed in this billing entry consists of administrative work. Richman's use of block billing does not allow the undersigned to separate the time allotted to recoverable work from the administrative work. Thus, the undersigned recommends that the entire entry be disallowed.

The undersigned must reduce this amount by $10 (.4 times $25) to $15,748.50 to account for Mr. Brumbaugh's reduced hourly rate. In sum, the undersigned finds **$92,660.00** ( $76,911.50 plus $15,748.50) to be a reasonable fee for Richman's probate litigation work performed between March and November 2008.

 With respect to costs, Richman sought $2,562.15 in the bills initially submitted to the SEC. These costs include photocopies, courier service, telephone and postage. The SEC recommended that Richman recover the full costs incurred in the probate litigation. The undersigned has reviewed the costs in the probate litigation and finds that they are reasonable. Accordingly, Richman should recover full costs of **$2,562.15** incurred in the probate litigation.

###  c. Additional Fees - Main Litigation (December 2008 - February 2009)

 Richman's additional billing records seek $21,868 in fees and $577.74 in costs for the main litigation and $11,342.50 in fees and $212.17 in costs for the probate litigation. See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 1, 3/17/09). Richman's costs consist of courier fees, photocopies, telephone and postage. The undersigned finds that these expenses are reasonable and recommends that Richman recover full costs totaling $789.91 for the additional billing entries.

 The undersigned has also reviewed the additional bills submitted by Richman for work performed in the main litigation and in the probate case. As with the original bills, the undersigned finds that Mr. Richman's hourly rate is excessive for this case, where the DiSalvo Professionals will be paid from money that could go to the defrauded

investors and where the Court has asked the undersigned to consider the reduced rates charged by professionals retained by the Receiver. Accordingly, the undersigned will reduce Mr. Richman's billing rate to the more reasonable rate of $450 an hour.

With respect to the $21,868 in additional fees in the main litigation, the undersigned recommends substantial reductions. The bulk of these reductions are for billing entries that relate to the recovery of attorneys' fees. The undersigned has already determined that recovery for those fees is unreasonable. A few entries such as "review memo from Bunzel" are insufficiently detailed for the undersigned to determine their reasonableness. In sum, the undersigned recommends a $14,803 reduction. The undersigned further recommends that the remaining $7,065 ($21,868 minus $14,803) be further reduced by $580 (4 hours[17] at $145) to account for Mr. Richman's reduced hourly rate of $450. As such, reasonable additional fees for the main litigation should total $6,485.

### d.    Additional Fees - Probate Litigation (December 2008 - February 2009)

The undersigned has also reviewed the additional fees sought by Richman for work in the probate matter. The undersigned finds that the rates charged by the timekeepers in the probate matter are reasonable. However, certain reductions are necessary where the undersigned finds that the time entries provide insufficient information to determine their reasonableness. After carefully reviewing the records submitted by Richman, the undersigned finds that $2,804.50 should be disallowed in the probate matter for insufficient information or for time entries which do not appear

---

[17] Of the amount billed by Mr. Richman, four hours were allowed.

reasonable. The disallowed time entries are as follows:

| Date | Description | Amount |
|------|-------------|--------|
| 11/24/08 | Review Email re: Status | 85.00 |
| 12/1/08 | Conference GSB | 85.00 |
| 12/11/08 | Review File; Conference with GSB; Email to GSB | 170.00 |
| 2/10/09 | Review Correspondence | 85.00 |
| 3/6/09 | Conference with CHJ; Review of Files re Work Performed | 42.00 |
| 3/6/09 | Review File re: Time Entries and Make Corrections | 1,615.00 |
| 3/12/09 | Finalize Email to GSB Re: Time Review | 127.50 |
| 3/13/09 | Conference Call with GASB and Mr. Gors; Attempt to Reach Ms. DiFabio; Phone Ms. DiFabio; Phone Conference with GSB re: Conference with Ms. DiFAbio; Suggest Conference Call with Opposition Counsel; Review Various Emails re: Proposed Conference Call Next Week | 595.00 |
| | **Total:** | **$2,804.50** |

Thus, Richman should recover $8,538.00 ($11,342.50 minus $2,804.50) in additional fees for the probate litigation matter and $212.17 in additional costs.

In sum, the undersigned finds that reasonable fees total **$242,311.35** (235,826.35 plus $6,485) in the main litigation and **$101,198.00** ($92,660.00 plus $8,538.00 ) in the probate litigation. Additionally, the undersigned finds that Richman should recover reasonable costs of **$6,866.11** for the main litigation ($6,288.37 plus $577.74) and **$2,774.32** ($2,562.15  plus $212.17) for the probate litigation.

8.      **Lovitt & Hannan, Inc.**

Lovitt & Hannan, Inc. (hereinafter "Lovitt"),[18] a California law firm, represented the DiSalvo brothers individually and in their capacity as the representatives of the DiSalvo estate and Lisa DiSalvo (a/k/a Lisa Dickey) in the California litigation commenced by the Receiver. Lovitt initially sought $48,103 in fees. Of this amount, the SEC recommended that $28,908 be awarded. The SEC recommended reductions (9.9 hours) based on insufficiently detailed billing entries and work related to the payment of fees. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 37-38, 1/5/09). The SEC also found that attorney Tom Hannan's hourly rate of $650 per hour was excessive and reduced the rate to $450.

Lovitt objected to the SEC's recommendation. See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6, 1/20/09).  Lovitt argues that "the Court should not adopt [the SEC]'s recommendation regarding hourly rates greater than $450 solely because the Receiver's lawyer accepted a lower rate in this matter." Id. at 3. The Court has already rejected this argument in its referral of the instant matter to the undersigned. See Order of Reference to Magistrate Judge (DE# 407 at 2, 1/22/09) (requesting that the undersigned "consider that the professionals retained by the Receiver in this case have been retained at a discounted hourly rate and that

---

[18] Lovitt is of counsel to Bartko, Zankel, Tarrant & Miller.

consideration should be included in any determination of reasonableness of professional fees with respect to the DiSalvo Professionals"). Lovitt submits the affidavit of Robert A. Goodin, Esq. in support of its hourly rate. See Notice of Filing Expert Affidavits Pursuant to Court Order Dated March 3, 2009 (DE# 497 at Exhibit 2, 3/17/09). The undersigned has considered J. Thomas Hannan's educational background and extensive experience as well as Mr. Goodin's affidavit and finds that $450 is a reasonable hourly rate for Mr. Hannan. The undersigned further finds that the $90 hourly rate charged by Lovitt's paralegal is reasonable.

With respect to the 9.9 hour reduction recommended by the SEC, Lovitt has submitted more detailed explanations for some of these time entries. For instance, the June 17, 2008 time entry described the following: "Preparation and attendance at meetings with Bunzel, J. Yi, G. Betensky, D. Darst, K. Gors re: client issues."  The SEC recommended that this entry be denied for insufficient explanation of issues. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381, 1/5/09). In Lovitt's response to the SEC's report, Lovitt explains that "counsel and Mr. Gors met to prepare and address with the clients the just-disclosed result of analysis of Sherry DiSalvo's bookkeeping records that showed she had misappropriated a sum in excess of $10 million and the resulting necessity for the measures to be put in place to protect against any further expenditure of estate funds and properties." See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 4, 1/20/09). In light of Lovitt's supplemental information concerning the

44

purpose of the meeting the undersigned finds that the task and time expended are reasonable. Lovitt, however, does not provide additional information for the other disallowed entries other than generally stating that "[t]ime records were kept on a contemporary basis, and no one is disputing that the meetings, e-mails, phone calls, and tasks occurred. The clients have not dispute these sums. These fees were 'incurred' under applicable law at agreed hourly rates." Id. Without additional information concerning the nature of these entries, the undersigned cannot determine that tasks described simply as "various e-mails" or "e-mail traffic" were reasonable. The fact that the DiSalvos do not dispute the amount billed by Lovitt is of no moment, the DiSalvo's are not paying Mr. Lovitt's fees and under the agreement reached with the Receiver, the Court is entrusted to determine the reasonableness of these fees. Accordingly, the undersigned finds $30,888 ($28,908 plus $1,980, 4.4 hours at $450) in fees reasonable for the bills previously submitted to the SEC.

With respect to the costs submitted by Lovitt, the SEC recommended that all costs with the exception of a $60.30 working lunch be approved. Lovitt does not dispute the $60.30 reduction in costs. See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 2, 1/20/09). The undersigned agrees with the SEC's assessment regarding Lovitt's costs with the exception of travel costs to Las Vegas, Nevada for the deposition of Sarah Simmons. Lovitt billed $951.92 for meals and lodging (Lovitt billed an additional $284.50 in airfare which the undersigned will not reduce since this amount appears reasonable for airfare to Las Vegas). Lovitt's cost records are not sufficiently

45

detailed to allow the undersigned to determine counsel's length of stay in Las Vegas. At a minimum, counsel spent two days and one night in Las Vegas. See Exhibit B at 39 (listing billing entries for 5/29/08 through 5/30/08). Accordingly, the undersigned will allow $188 for lodging, meals and incidental expenses for the first night and $48 for the last day of travel pursuant to the per diem rates approved by the General Services Administration. As discussed above, the Court will rely on the maximum per diem allowance determined by the Administrator of General Services for official travel by employees of the Federal government as a reasonable travel reimbursement rate. See 28 U.S.C. § 1821(d)(2), discussed supra. Accordingly, Lovitt should recover $236 for lodging and meals for the Las Vegas deposition of Sarah Simmons. The undersigned finds total reasonable costs for Lovitt to be **$2,917.72** ($3,918.14 minus $1,000.42 in disallowed travel costs).

On March 17, 2009, Lovitt filed additional billing entries totaling $29,510.00 (45.4 hours at $650) in fees and $2,700.89 in costs incurred from July 1, 2008 through March 3, 2009. See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 3, 3/17/09). Of the $2,700.89 in costs, Lovitt seeks to recover $2,586.58 in airfare and lodging for the March 3, 2009 hearing before the undersigned related to the DiSalvo Professionals' fee request. The undersigned will disallow these expenses as they relate to attorneys' fees.  The remaining costs $114.31 ($2,700.89 minus $2,586.58) relating to photocopy expenses appear reasonable. Accordingly, Lovitt should recover $114.31 in additional costs.

With respect to additional fees, the undersigned recommends that Mr. Hannan's

hourly rate be reduced to $450 for the reasons stated above. Additionally, some of the time entries for these additional fees should be eliminated because they are insufficiently detailed or relate to the recovery of attorneys' fees.  Thus, the undersigned recommends that the following billing entries be disallowed.

| Date | Description | Time | Reason |
|------|-------------|------|--------|
| 9/9/08 | Review of settlement issues pertaining to California matters; review e-mail traffic; e-mail Gors. | .70 | Vague[19] |
| 11/17/08 | E-mail traffic re billing and prior billing by other counsel, conference with Bunzel re same. | .70 | Relating to fees |
| 11/21/08 | Review of billing records and redaction issues for submission to Levenson. | .3 | Relating to fees |
| 11/24/08 | Review of redacted billings, various conferences re submission and client issues. | .2 | Relating to fees[20] |
| 11/25/08 | Review of submission to Levenson, review of P[i]lsburry billing. | .5 | Relating to fees |
| 12/11/08 | Conference re Levenson request for unredacted billings, confidentiality and protection from unnecessary public disclosure. | .4 | Relating to fees |
| 1/5/09 | Review and analysis of Levenson report to the Court; various conferences with Bunzel and other co-counsel. | 1.20 | Relating to fees |

---

[19] The undersigned only finds the later part of the entry concerning the emails to be vague. However, because Lovitt's use of block billing makes it impossible for the undersigned to apportion the time spent on this task, the undersigned recommends that the entire entry be disallowed.

[20] At least part of this billing entry relates to the recovery of attorneys' fees. Because the undersigned cannot separate this portion of the billing entry from the remaining tasks, the undersigned recommends that the entire billing entry be disallowed.

| 1/5/09 | E-mail traffic re Levenson report and possible objections | .30 | Relating to fees |
|--------|---|---|---|
| 1/15/09 | Preparation of response to Levenson disallowances; various conferences with Bunzel; review of proposed responses. | 1.80 | Relating to fees |
| 2/18/09 | Conference with Bunzel re attendance at March 3rd hearing; various e-mails re same. | .40 | Relating to fees |
| 2/23/09 | Review of files for preparation of document binder for March 3 hearing; review of status of IRS and property issues. | .90 | Relating to fees[21] |
| 2/26/09 | E-mail traffic re plan to attend hearing | .10 | Relating to fees |
| 3/1/09 | Review of documents and records in preparation for hearing | 1.70 | Relating to fees |
| 3/2/09 | Review of documents en route to Miami | 2.20 | Relating to fees |
| 3/3/09 | Preparation for hearing; meeting at Richman Greer, Miami in preparation for hearing and attendance, appearance and argument at hearing. | 7.10 | Relating to fees |
| **Total:** | | **18.5** | |

Thus, the undersigned recommends that a total of 18.5 hours be disallowed.

Accordingly, the undersigned finds that reasonable supplemental fees for Lovitt to be

$12,105 ( 26.9 hours [45.4 hours minus 18.5] at $450).

In sum, Lovitt should recover **$42,993** ($30,888 plus $12,105) in reasonable fees

and **$3,032.03** in costs.

**9.     Bartko, Zankel, Tarrant & Miller**

Bartko, Zankel, Tarrant & Miller (hereinafter "Bartko") was retained along with

---

[21] While only part of this entry relates to fees, the undersigned recommends that the entire entry be disallowed because the amount of time spent on the fees issue cannot be separated.

Lovitt to represent the DiSalvos in the California litigation commenced by the Receiver. Bartko sought to recover $332,805 in attorneys' fees and $14,847.28 in costs. The SEC recommended that Bartko's total fees be reduced to $190,006.50. The SEC reduced attorney Robert Bunzel's hourly rate from $550 an hour to $450 an hour. Mr. Bunzel's reduced hourly rate resulted in a $1,925.00 (19.25 allowed hours times $100) reduction. The SEC further recommended $43,481.50 in reductions for insufficiently detailed billing entries or generic descriptions, clerical or administrative work, excessive time spent on a task or work related to the recovery of fees, $29,380 in reductions for work related to discovery performed by attorney Michael D. Abraham,[22] $19,475 for generic billing entries by attorney Kerry L. Duffy related to discovery and $6,650 for work performed by summer associates.

In addition, the SEC recommended that $41,887.50 for work related to the deposition of Sarah Simmons be denied. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 45-48, 1/5/09). The SEC noted that Bartko had three partners, two associates, two paralegals, two clerks and an IT representative working on preparing for this deposition. Id. at 45. "Due to the lack of detailed explanation from the firm of exactly why each of the ten people who billed for this matter was necessary, what role they played, how their work was separate and why three partners were necessary, especially in light of the fact that lawyers from three other firms prepared for and attended this deposition,

---

[22] The SEC found that another attorney Jae S. Yi also billed for this work and recommended that Mr. Abraham's work be disallowed. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 43-44, 1/5/09).

the Commission recommends the Court deny all payment for this work at this time." <u>Id.</u> at 46 (emphasis in original). Nonetheless, the SEC requested that the Court allow Bartko to provide an explanation. <u>Id.</u>

With respect to Bartko's costs, the SEC recommended that Bartko recover $2,839.20. <u>See</u> Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 48, 1/5/09). The SEC recommended substantial reductions in costs to account for word processing charges and nondescript copy costs. However, the SEC recommended that the Court allow Bartko to submit a more detailed explanation of these costs. <u>Id.</u> Bartko has since submitted billing records for the copy costs. The undersigned has reviewed the invoices and additional documentation submitted by Bartko and recommends that these costs be allowed. Thus, the undersigned recommends that Bartko recover **$13,322.05** ($2,839.20 plus $10,482.85) in costs. The undersigned finds that the reductions for word processing were reasonable.

Bartko's objection to the SEC's report was filed on January 20, 2009. <u>See</u> Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6, 1/20/09); Declaration of Michael D. Abraham in Support of Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, a Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-7, 1/20/09). Bartko does not dispute the $6,650 reduction recommended by the SEC for summer

associate hours. <u>See</u> Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant &

Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees

Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 2,

1/20/09).

 In its objection, Bartko disputes the recommended reduced hourly rate for

attorney Robert Bunzel. <u>See</u> Response of Lovitt & Hannan, Inc. and Bartko, Zankel,

Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys'

Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 3,

1/20/09). The undersigned agrees with the SEC's recommendation that Mr. Bunzel's

rate be reduced to $450 for the same reason the other DiSalvo Professionals' rates

exceeding this amount were reduced.

 Bartko also objects to the $43,481.50 reduction recommended by the SEC for

insufficiently detailed billing entries, clerical or administrative work or work related to the

recovery of fees. With respect to clerical or administrative work, Bartko states that this

amount totals $14,162 and argues that it should recover for this work because "[t]his

was a complex representation involving multiple clients in different capacities

(individually and as estate representatives), with multiple co-counsel and disputes in four

separate forums . . . ." <u>Id.</u> at 3. The undersigned has reviewed the chart contained in the

SEC's report and notes that only three entries, totaling $465, were disallowed for being

an administrative task. The remaining entries which comprise the $43,481.50 reduction

were disallowed because they were insufficiently detailed, related to the recovery of

fees, contained generic descriptions or were excessive. The undersigned has reviewed

the three billing entries which the SEC specifically disallowed for being administrative

work and agrees with the SEC's recommendation.

Bartko also objects to the SEC's reductions for insufficiently detailed time entries. Bartko argues that "[t]ime records were kept on a contemporary basis, and no one is disputing that the meetings, e-mails, phone calls, and tasks occurred. The clients have not disputed these sums. The fees were 'incurred' under applicable law at the agreed hourly rate." See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 4, 1/20/09). Notwithstanding Bartko's arguments, the Court must determine the reasonableness of these fees pursuant to the parties' Settlement Agreement. Without sufficient information concerning the nature of the tasks performed the Court cannot determine reasonableness. The following are examples of billings entries that the SEC recommended be disallowed because of insufficient detail: "arrange transfer of production materials; review attorney memos",  "Messages Hannan re probate counsel", "Litigation support database projects" and "Prepare documents for review; database management; support attorneys." These nondescript billing entries do not allow the Court to determine the reasonableness of the work performed. Unlike other DiSalvo Professionals, Bartko did not submit supplemental billing details to provide the undersigned with additional information in determining the reasonableness of these vague or nondescript billing entries. Thus, the undersigned must recommend that these billing entries be disallowed. Bartko's objection does not address  the SEC's recommendation that fees related to the recovery of attorneys' fees be denied. For the reasons stated in this Report and Recommendation, the undersigned agrees with the

SEC and finds that billing entries related to the recovery of attorneys' fees should be disallowed.

The undersigned has reviewed the entries comprising the $43,481.50 reduction and finds that the SEC's disallowances were proper and Bartko has not supplemented the entries that were denied for insufficient detail.

The next category that Bartko objects to are Mr. Abraham's billing entries related to discovery. As noted above, the SEC recommended $29,380 in reductions for work related to discovery performed by attorney Michael D. Abraham because Mr. Abraham billed for responding to discovery on many of the same days as attorney Jae Yi. See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 43-44, 1/5/09). Bartko submitted the Declaration of Michael D. Abraham in Support of Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, a Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-7, 1/20/09) in response to the SEC's recommendation. With respect to the work performed by Mr. Abraham and Ms. Yi, Mr. Abraham's declaration states that:

> While there were communications between Ms. Yi and [Mr. Abraham] about responses to specific discovery requests, as well as to coordinate [their] efforts, such communications did not constitute an improper duplication. For example, [Mr. Abraham] drafted the majority of Wayne DiSalvo's responses to . . . two sets of requests for admission, each containing over 100 requests, as well as corresponding form interrogatory 17.1 for the second set of requests. Ms. Yi and [Mr. Abraham] divided up aspects of the work concerning the remaining sixteen (16) sets of discovery requests.

See Declaration of Michael D. Abraham in Support of Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, a Professional Corporation, to Plaintiff's Report to

Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo

Defendants (DE# 401-7 at 3, 1/20/09).

Mr. Abraham further explains that:

It would not have been possible for Ms. Yi alone to prepare the voluminous number of [discovery] responses required in the short time available. Rather it would have placed the clients at an improper risk and jeopardy given the Receiver's pending motion to have requests for admission deemed admitted and for sanctions.

Id.  Based on Mr. Abraham's sworn declaration concerning the division of labor between

himself and Ms. Yi and the shortened amount of time Bartko had to respond to

numerous outstanding discovery requests, the undersigned finds reasonable the

$29,380 previously sought by Bartko for Mr. Abraham's work related to discovery.

The SEC also recommended a $19,475 reduction in the billing entries submitted

by attorney Kerry Duffy. See Plaintiff's Report to Court on Attorneys' Fees Related to the

Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 44, 1/5/09). The SEC

recommended that this amount be disallowed for Ms. Duffy's generic billing entries

labeled reviewing and analyzing documents for production or discovery. Id. Mr.

Abraham's declaration discusses Ms. Duffy's work in general terms. It states that:

Documents had to be reviewed for content, for production as well as privilege as part of the work required to respond to requests for admission, interrogatories and document demands. Quite simply, it was not possible to properly respond to the discovery and properly represent our clients without locating and reviewing substantial records. This work was made more difficult and compounded by: (i) the fact that [the] clients had little knowledge of the operation of decedent Sheri DiSalvo's business and its interactions with World Wide Entertainment; and (ii) the Receiver had taken possession of the digital records of the decedent's business, so responses required a greater effort to utilize what other digital and hard copy records were available. **Ms. Duffy's time was not duplicative of the time spent by other Bartko Zankel attorneys**.

54

See Declaration of Michael D. Abraham in Support of Response of Lovitt & Hannan, Inc.

and Bartko, Zankel, Tarrant & Miller, a Professional Corporation, to Plaintiff's Report to

Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo

Defendants (DE# 401-7 at 4-5, 1/20/09) (emphasis added).

The undersigned has reviewed the billing entries in question and finds that they

should be disallowed in their entirety. Bartko has not submitted additional details to allow

the undersigned to differentiate, for example, between"analyze and review documents

for production" performed on May 23, 2008 and the identical billing descriptions on May

25, 2008, May 27, 2008 and May 29, 2008. Mr. Abraham's declaration is not sufficiently

detailed to provide the undersigned with justification to allow these vague billing entries.

At the very least, Ms. Duffy should have submitted supplemental billing entries

identifying the source of the documents (e.g. documents obtained from client) or the

number of documents she was reviewing on a given day to allow the Court to

differentiate from the multiple billing entries with the same description. Based on the

foregoing, the undersigned finds the $19,475 reduction to be reasonable.

Lastly, the SEC recommended disallowances totaling $41,887.50 for billing

entries related to the deposition of Sarah Simmons.[23] See Plaintiff's Report to Court on

Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE#

---

[23] Bartko states that its review of billing records shows $41,410.50 was expended in connection with all depositions and that "[m]any of the line items in Plaintiff's Report at pages 45-48 identify entries where deposition work was noted along with other legal activities during the same day or time entry. Thus, [the SEC's] macro number of $41,887.50 for Bartko Zankel deposition-related work is overstated." See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 7, 1/20/09).

381 at 45 - 48, 1/5/09). The SEC recommended that this amount be disallowed after

noting that three partners, two associates, two paralegals, two law clerks and an IT

representative worked on preparing for Ms. Simmons' deposition. Id. at 45. The SEC

noted that Bartko billed over 140 hours in approximately four weeks. Id. at 45-46. The

SEC was particularly concerned with two partners, Mr. Abraham and Ms. Yi, billing for

this work. Nonetheless, the SEC recommended that Bartko be provided with an

opportunity to explain why so many individuals were necessary in preparing for this

deposition. Id. at 46.

Bartko did not send an attorney to Ms. Simmons' deposition. Rather, it provided

written and outline work to other DiSalvo Professionals in advance of the deposition.

See Response of Lovitt & Hannan, Inc. and Bartko, Zankel, Tarrant & Miller, A

Professional Corporation, to Plaintiff's Report to Court on Attorneys' Fees Related to the

Receiver's Settlement with the DiSalvo Defendants (DE# 401-6 at 7, 1/20/09). Bartko's

participation was as follows:

> To prepare for the Simmons deposition, documents produced by Yeager,
> the Reciever, the clients, Sheri DiSalvo, Michael Smith and Sara[h]
> Simmons required intensive review. [Bartko] w[as] the primary [firm] doing
> this. [Bartko's] work product included a multiple-page, single spaced
> memorandum provided to all co-counsel regarding the Simmons deposition
> general goals, outline of questions, subject matters and reference to
> specific documents to be used. A binder was prepared by the Firms of key
> documents for the deposition. This was copied and sent to all the defense
> counsel involved in the process and following review of the total
> documents in the database, and a resulting 72-page "Simmons and
> Goldberg Documents with Descriptions" index as to approximately 1,050
> records, with columns for bates number, Goldberg bates number, date of
> document, description (detailed), and comments used in culling and
> locating the records needed for the examination and its preparation. . . .
> The binder sent to all co-counsel included copies of approximately 50
> separate documents. . . . [that] were critical to the preparation for the
> deposition and its focus.

Id. at 7-8. With respect to the number of individuals working on this task, Bartko responds generically that: "[e]lectronic document review and categorization requires participation of technical para-professionals, paralegals and lawyers." Id. at 8.

To assist the Court in resolving this matter without further hearings or delays, Bartko agreed to an approximate one-third ($14,000) reduction of the $41,887.50 amount. Id. at 8. The undersigned finds that some entries are vague, such as "Attention to Sarah Simmons deposition preparation" and "Prepare materials for S. Simmons deposition conference with team re same." See Exhibit B at 48. A reduction is warranted to account for these vague descriptions and to account for the excessive number of time keepers and hours spent on this task.[24] The undersigned finds Bartko's proposed $14,000 to be reasonable. Thus, the undersigned recommends that Bartko recover $27,887.50 for work related to deposition preparation.

With respect to the initial bills submitted by Bartko, the undersigned finds reasonable fees total $247,274.00 ($190,006.50 allowed by the SEC plus $29,380 for Mr. Abraham's work and $27,887.50 for reasonable work related to deposition preparation). The undersigned will reduce this amount by the $50,000 retainer Bartko currently holds in trust to **$197,274.00**.

On March 17, 2009, Bartko filed additional billing entries totaling $39,275 in fees

---

[24] The undersigned acknowledges that many of the entries that are attributed to work related to the preparation of Sarah Simmons' deposition also contain time spent on other tasks. However, Bartko's use of block billing makes it impossible for the Court to determine the amount of time that was purely devoted to Sarah Simmons' deposition preparation. By Bartko's own estimates, a substantial amount ($41,410.50) was spent on work related to all depositions, including some depositions that were ultimately not taken.

and $3,141.57 in costs for work performed between June 24, 2008 and March 3, 2009. See Notice of Filing Additional Billings Pursuant to Court Order Dated March 3, 2009 (DE# 498 at Exhibit 3, 3/17/09). Bartko also filed the affidavit of Robert A. Goodin, Esq. to support the reasonableness of its hourly rates. See Notice of Filing Expert Affidavits Pursuant to Court Order Dated March 3, 2009 (DE# 497 at Exhibit 2, 3/17/09).

With respect to the additional fees requested by Bartko, the undersigned finds that a $25,447.50 reduction is warranted for time entries that are vague or specifically relate to the recovery of attorneys' fees by Bartko for work performed in this matter. The disallowed additional billing entries are as follows:

| Date | Timekeeper | Amount | Reason |
|------|-----------|--------|--------|
| 6/26/08 | MDA | $80 | Insufficient detail |
| 7/9/08 | PMV | $100 | Insufficient detail |
| 7/15/08 | RHB | $412.50 | Related to the recovery of fees |
| 11/6/08 | RHB | $825 | Related to the recovery of fees |
| 11/6/08 | RHB | $687.50 | Related to the recovery of fees |
| 11/10/08 | RHB | $275 | Related to the recovery of fees |
| 11/17/08 | RHB | $440 | Related to the recovery of fees |
| 11/20/08 | RHB | $632.50 | Related to the recovery of fees |
| 11/21/08 | RHB | $2,200 | Related to the recovery of fees |
| 11/24/08 | PMV | $350 | Related to the recovery of fees |
| 11/24/08 | RHB | $2,750 | Related to the recovery of fees |
| 11/25/08 | RHB | $3,767.50 | Related to the recovery of fees |
| 12/11/08 | RHB | $302.50 | Related to the recovery of fees |
| 12/29/08 | RHB | $82.50 | Related to the recovery of fees |
| 1/5/09 | RHB | $825.00 | Related to the recovery of fees |

| 1/8/09 | RHB | $192.50 | Related to the recovery of fees |
|---|---|---|---|
| 1/12/09 | MDA | $1,120 | Related to the recovery of fees |
| 1/13/09 | MDA | $840 | Related to the recovery of fees |
| 1/13/09 | RHB | $1,787.50 | Related to the recovery of fees |
| 11/14/09 | RHB | $1,375 | Related to the recovery of fees |
| 1/15/09 | MDA | $240 | Related to the recovery of fees |
| 1/15/09 | RHB | $412.50 | Related to the recovery of fees |
| 1/15/09 | RHB | $1,485 | Related to the recovery of fees |
| 1/23/09 | RHB | $82.50 | Related to the recovery of fees |
| 1/24/09 | RHB | $412.50 | Related to the recovery of fees |
| 1/26/09 | RHB | $962.50 | Related to the recovery of fees |
| 1/27/09 | RHB | $192.50 | Insufficient Detail |
| 2/3/09 | MDA | $880 | Related to the recovery of fees |
| 2/24/09 | ANH | $30 | Related to the recovery of fees |
| 2/27/09 | RHB | $467.50 | Related to the recovery of fees |
| 3/3/09 | RHB | $137.50 | Related to the recovery of fees |
| 3/3/09 | RHB | $1,100 | Related to the recovery of fees |
| | **Total:** | **$25,447.50** | |

Thus, the additional fees requested by Bartko should be reduced to $13,827.50 ($39,275 minus $25,447.50). This amount must further be reduced by $1,670 (16.7 hours time $100) to account for the $450 ($550 minus $100) reduced hourly rate for Mr. Bunzel. Thus, reasonable additional fees for Bartko total **$12,157.50** ($13,827.50 minus $1,670).

    Bartko's additional costs consist of court filings fees, messenger/delivery charges, outside and in-house copy services, postage charges, online research and word

processing charges. The SEC previously recommended that Bartko's word processing costs be denied. The SEC reasoned that "[w]hile this may be a completely justifiable charge for private, paying clients, it does not seem reasonable for these attorneys to take money that otherwise would go to defrauded investors for what amounts to typing services." See Plaintiff's Report to Court on Attorneys' Fees Related to the Receiver's Settlement with the DiSalvo Defendants (DE# 381 at 48, 1/5/09). The undersigned agrees with the SEC's reasoning and finds that Bartko's additional costs as they relate to word processing services ($120) should be disallowed.  Accordingly, reasonable additional costs for Bartko total **$3,021.57.**

In sum, the undersigned finds that the total reasonable recovery for Bartko is **$209,431.50** ($197,274 plus $12,157.50) in fees and **$16,343.62** ($13,322.05 plus $3,021.57) in costs.

## CONCLUSION

In sum, the undersigned finds that reasonable attorneys' fees and costs in the instant case would total as follows.

| Professional | Fees | Costs | Total (Fees & Costs) | Percentage[25] Allocation Total |
|---|---|---|---|---|
| Donna Blaustein | $15,510 | $406 | $15,916 | $14,372.29 |
| Donald W. Darst | $46,755 | $1,017 | $47,772 | $43,138.55 |
| Michaelson & Co., P.A. | $42,593.75 | $963.50 | $43,557.25 | $39,332.59 |
| Kevin Gors/ Seal-Mar | $17,440 | $1,074 | $18,514 | $16,718.31 |

---

[25] The undersigned determined the percentage allocation by dividing the available fees of $700,000 by the recommended total fees and costs of $775,186.08, resulting in a 90.3009% allocation of recommended fees for each professional.

| Thirkell Law Group | $10,169 | $197.58 | $10,366.58 | $9,361.12 |
| Holland & Knight LLP | $14,104 | $6.32 | $14,110.32 | $12,741.75 |
| Richman Greer, P.A. | $343,509.35 | $9,640.43 | $353,149.78 | $318,897.43 |
| Lovitt & Hannan, Inc. | $42,993 | $3,032.03 | $46,025.03 | $41,561.02 |
| Bartko Zankel | $209,431.50 | $16,343.62 | $225,775.12 | $203,876.97 |
| **Total** | **$742,505.60** | **$32,680.48** | **$775,186.08** | **$700,000.03** |

Based on a careful review of the documents provided by the DiSalvo Professionals, the SEC's report and the Court's instructions in its Referral Order, the undersigned finds that reasonable fees and costs in the instant case total **$775,186.08**. Because this amount exceeds the $700,000.00 limit agreed to by the DiSalvos and the Receiver, the undersigned recommends that the Court approve the Settlement Agreement and award $700,000 in fees and costs and that the DiSalvo Professionals be permitted to allocate these funds among the various individuals, entities and firms.[26] Alternatively, the undersigned recommends that the Court award fees and costs to each DiSalvo Professional in accordance with the percentage allocation listed in the above chart.

## RECOMMENDATION

For all the foregoing reasons, the undersigned recommends that the Court approve $700,000 in fees and costs to the DiSalvo Professionals and that the DiSalvo Professionals be permitted to allocate these funds among the various professionals. Alternatively, the Court may allocate the fees in proportion to the amount of fees the

---

[26] During the March 3, 2009 hearing, the DiSalvo Professionals suggested to the Court that they could likely reach an agreement as to the allocation of the fees if the total recommended fees exceeded $700,000.

undersigned has found reasonable for each of the DiSalvo Professionals. See Chart, supra. It is further recommended that the Amended Motion for Release and Payment of 50% of Professional Fees and Costs (DE# 357, 12/1 2/08) be **DENIED as moot**.

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Paul C. Huck, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

DONE AND ORDERED in Chambers at Miami, Florida this **29th** day of April, 2009.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

United States District Judge Huck
All counsel of record
Copies mailed by Chambers to:

Donna R. Blaustein, Esq.
20900 N.E. 30th Avenue, Suite 403
Aventura, FL 33180

Donald W. Darst, Esq.
3052 Pleasure Point Drive
Santa Cruz, CA 95062

William M. Michaelson
Michaelson & Co, P.A.
1655 Palm Beach Lakes Blvd, Suite 710
West Palm Beach, FL 33401

Kevin Gors
Seal-Mar Protection Services
931 Village Blvd. # 905-174
West Palm Beach, FL 33409

Julia E. Lingys, Esq.
Thirkell Law Group
181 Second Avenue, Suite 625
San Mateo, CA 94401

Gerald F. Richman, Esq.
Richman Greer, P.A.
201 S. Biscayne Blvd
Miami, FL 33131

Robert H. Bunzel, Esq.
Bartko, Zankel, Tarrant & Miller
900 Front Street, Suite 300
San Francisco, CA 94111

John M. Compagno, Esq.
Holland & Knight
50 California Street, Suite 2800
San Francisco, CA 94111-4726

Tom Hannan, Esq.
Lovitt & Hannan, Inc.
900 Front Street, Suite 300
San Francisco, CA 94111